IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MOHAMMED BIN JAIED ALADI AL MOHAMMED AL SUBAIE, *et al.*, <br> *Petitioners,* <br><br> v. <br><br> GEORGE W. BUSH, *et al.*, <br> *Respondents.* | Civil Action No. 2216-05 (RCL) |


### MOTION FOR ORDER REQUIRING RESPONDENTS TO PROVIDE COUNSEL FOR PETITIONERS AND THE COURT WITH 30-DAYS' ADVANCE NOTICE OF ANY INTENDED REMOVAL OF PETITIONERS FROM GUANTANAMO

Pursuant to Rule 65 of the Federal Rules of Civil Procedure and the All Writs Act, 28 U.S.C. § 1651, Petitioners respectfully move for an order requiring Respondents to provide counsel for Petitioners and the Court with advance notice of any intended removal of any of Petitioners Mohammed Bin Jaied Bin Aladi Al Mohammed Al Subaie, Bijad Defalla Oteibi or Alghamdi Adbulrahman Othman A (hereinafter referred to collectively as "Detained Petitioners") from Guantánamo Bay Naval Base in Cuba. On information and belief, Respondents have contemplated or are contemplating removal of individuals detained at Guantánamo, such as Detained Petitioners, from Guantánamo to foreign territories for torture or indefinite imprisonment without due process of law. Detained Petitioners are requesting the advance notice to enable their counsel to contest any such removal from Guantánamo and preserve the jurisdiction of the Court in this matter.

## STATEMENT OF FACTS

Detained Petitioners are citizens of Saudi Arabia who are being detained as "enemy combatants" at the Guantánamo Bay Naval Base in Cuba. As detailed in the habeas petition they have filed on November 14, 2005, each of them denies being an "enemy combatant" and contends he is being detained in violation of the Constitution, treaties and laws of the United States, as well as international law.

Each Detained Petitioner in the instant case has reason to fear he will be transferred to a country where he will be tortured and/or detained indefinitely without due process of law. Upon information and belief, the United States has secretly removed detainees and others suspected of terrorist crimes to other countries for interrogation or detention without complying with extradition or other legal process. This practice, known as "rendition," "irregular rendition," or "extraordinary rendition," is understood to be used to facilitate interrogation by subjecting detainees to torture.

According to reports by American and foreign news organizations, including the *Washington Post*, the *Los Angeles Times* and the British Broadcasting Corporation, the United States Government has repeatedly transferred detainees into the custody of foreign governments that employ inhumane interrogation techniques. According to an article in the *New Yorker*, the "rendition" process was originally "a program aimed at a small, discrete set of suspects – people against whom there were outstanding foreign arrest warrants," but after September 11 came to include a "wide and ill-defined population that the Administration terms 'illegal enemy combatants.'" Jane Mayer, *Outsourcing Torture*, New Yorker, Feb. 14, 2005, at http://www.newyorker.com/fact/content/?050214fa_fact6, ¶ 7. According to the *Washington Post*,

> Since Sept. 11, the U.S. government has secretly transported dozens of people suspected of links to terrorists to countries other than the United States, bypassing extradition procedures and legal formalities, according to Western diplomats and intelligence sources. The suspects have been taken to countries . . . whose intelligence services have close ties to the CIA and where they can be subjected to interrogation tactics – including torture and threats to families – that are illegal in the United States, the sources said. In some cases, U.S. intelligence agents remain closely involved in the interrogation, the sources said.

Rajiv Chanrasekaran & Peter Finn, *U.S. Behind Secret Transfer of Terror Suspects*, Wash. Post, Mar. 11, 2002, at A1; *see also* Dana Priest & Barton Gellman, *U.S. Decries Abuse But Defends Interrogations,* Wash. Post, Dec. 26, 2002, at A1. The countries to which detainees may be brought are known to practice torture. *See, e.g.*, Megan K. Stack & Bob Drogin, *Detainee Says U.S. Handed Him Over For Torture,* L.A. Times, Jan. 13, 2005, at A1 ("News accounts, congressional testimony and independent investigations suggests that [the CIA] has covertly delivered at least 18 terrorism suspects since 1998 to Egypt, Syria, Jordan and other Middle Eastern nations where, according to State Department reports, torture has been widely used on prisoners.").

According to recent news accounts, Guantánamo detainee Mamdouh Habib was rendered to Egypt by the United States *before* being moved to Cuba. During his six months in Egyptian custody, Mr. Habib was allegedly tortured without mercy:

> He said that he was beaten frequently with blunt instruments, including an object that he likened to an electric "cattle prod." And he was told that if he didn't confess to belonging to Al Qaeda he would be anally raped by specially trained dogs. . . . Habib said that he was shackled and forced to stand in three torture chambers: one room was filled with water up to his chin, requiring him to stand on tiptoe for hours; another chamber, filled with water up to his knees, had a ceiling so low that he was forced into a prolonged, painful stoop; in the third, he stood in water up to his ankles, and within sight of an electric switch and a generator, which his jailers said would be used to electrocute him if he didn't confess.

Mayer, *Outsourcing Torture* at ¶ 54. The credibility of Mr. Habib's account is bolstered by the State Department, which has consistently identified the Egyptian government as a practitioner of

torture. In a report released on February 28, 2005, for example, the State Department found that "there were numerous, credible reports that security forces tortured and mistreated detainees" and that "torture and abuse of detainees by police, security personnel, and prison guards remained common and persistent." Dep't of State, *Country Reports On Human Rights Practices, Egypt 2004*, at http://www.state.gov/g/drl/rls/hrrpt/2004/41720.htm, § 1(c). Similarly, in August 2005, the United States State Department concluded that "the United States remains concerned about human rights conditions in Saudi Arabia. Principal human rights problems include abuse of prisoners. . ." Dep't of State, Bureau of Near Eastern Affairs August 2005, Background Note: Saudi Arabia, at http://www.state.gov/r/pa/ei/bgn/3584.htm. In the report released on February 28, 2005, the State Department found that "Security forces continued to abuse detainees and prisoners, arbitrarily arrest, and hold persons in incommunicado detention * * * [A]uthorities reportedly at times abused detainees, both citizens and foreigners. Ministry of Interior officials were responsible for most incidents of abuse of prisoners, including beatings, whippings, and sleep deprivation. In addition, there were allegations of beatings with sticks and suspension from bars by handcuffs. There were allegations that these practices were used to force confessions from prisoners." Dep't of State, *Country Reports on Human Rights Practices, Saudi Arabia, 2004* at http://www.state.gov/g/drl/rls/hrrpt/2004/41731.htm, § 1(c).

Each Detained Petitioner has reason to fear that he will be transferred into the custody of the government of Saudi Arabia or a third country for continued illegal detention without due process of law. On information and belief, a number of detainees have been removed to countries where they have been imprisoned and denied access to the courts. Moreover, recent news reports indicate that the United States government is contemplated transferring a large number of Saudi detainees to Saudi Arabia very soon. Maha Akeel, *40 Saudis Likely to Be Freed from Guantanamo Soon*, Arab News, Nov. 7, 2005. *See also* Dana Priest, *Long-Term Plan Sought*

*For Terror Suspects*, Wash. Post, Jan. 2, 2005, at A1 (noting that United States government is contemplating transfer of "large numbers of Afghan, Saudi and Yemeni detainees from the military's Guantánamo Bay, Cuba, detention center into new U.S.-built prisons in their home countries").

## ARGUMENT

Under the All Writs Act, 28 U.S.C. § 1651(a), this Court has the inherent power "to issue injunctions to protect its jurisdiction." *SEC v. Vision Communications, Inc.*, 74 F.3d 287, 291 (D.C. Cir. 1996); *Envtl. Def. Fund v. EPA*, 485 F.2d 780, 784 n.2 (D.C. Cir. 1973). Petitioners' request meets the most fundamental purpose of preliminary injunctive relief, "to preserve the status quo between the parties pending a final determination of the merits of the action." 13 Moore's Federal Practice 3d, § 65.20 (2004).

Each of the four factors to be weighed in awarding preliminary injunctive relief favors the requested injunction here: (1) Detained Petitioners will suffer irreparable harm if the injunction is denied; (2) no harm will be suffered by Respondents if the injunction is granted; (3) Detained Petitioners are likely to succeed on the merits of their claims; and (4) there is a clear public interest in preventing the United States Government from rendering individuals to foreign countries for detention and torture. *See Al-Fayed v. CIA*, 254 F.3d 300, 303 & n.2 (D.C. Cir. 2001); *Serono Labs., Inc. v. Shalala*, 158 F.3d 1313, 1317-18 (D.C. Cir. 1998); *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1066 (D.C. Cir. 1998).

Detained Petitioners stand to suffer immeasurable and irreparable harm – from torture to possible death – at the hands of a foreign government. Transfer to another country, even if "only" for continued imprisonment, also circumvents Detained Petitioners' right to adjudicate the legality of their detention in this Court. By contrast, Respondents, who have already held Detained

Petitioners for several years, are asked only to provide counsel and the Court with adequate notice of any intended removal of any of the Detained Petitioners from Guantánamo. Respondents can suffer no conceivable harm from complying with such a request.

Detained Petitioners are likely to succeed on the merits of their claims. Detained Petitioners have properly invoked the jurisdiction of this Court. *See, Rasul v. Bush*, 124 S. Ct. 2686, 2698 (2004). Judge Joyce Hens Green of this Court has already ruled that detainees in circumstances similar to those of Detained Petitioners have stated actionable claims under the Due Process Clause and the Geneva Conventions. For the United States Government to remove Detained Petitioners to countries that would afford no such protections would be to flout Judge Green's ruling and defeat the Court's jurisdiction. Such a transfer would also violate basic international legal norms embodied not only in the Geneva Conventions but also in the International Covenant on Civil and Political Rights and the Convention Against Torture and Other Cruel and Degrading Treatment and Punishment.

Finally, public policy favors requiring Respondents to provide advance notice to counsel and the Court of any intended removal of any of Detained Petitioners from the Court's jurisdiction. No matter how satisfied the Executive Branch may be that its actions are lawful, the public good requires that a federal litigant – properly before the Court and represented by counsel – be provided with a meaningful opportunity to contest his transfer into the hands of those who might torture him or detain him indefinitely.

## CONCLUSION

For the reasons discussed above, the motion should be granted.

Dated: New York, New York
November 17, 2005

                                  Respectfully submitted,

                                  Counsel for Petitioners:

/s/ Charles H.R. Peters

Charles H.R. Peters
Beth D. Jacob
Antony S. Burt
David H. Anderson
Michael W. Drumke
Donald A. Klein
Brian J. Neff
Seth D. Lamden

SCHIFF HARDIN LLP
623 Fifth Avenue
New York, New York 10022
Tel: (212) 753-5000
Fax: (212) 753-5044
      *and*
6600 Sears Tower
Chicago, IL 60606
Tel: (312) 258-5500
Fax: (312) 258-5600


*Of Counsel*
Barbara J. Olshansky (NY0057)
Director Counsel
Tina Monshipour Foster (TF5556)
Gitanjali S. Gutierrez (GG1234)
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6439
Fax: (212) 614-6499

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been served by Certified Mail, Return Receipt Requested, to the following persons:

**Kenneth L. Wainstein**
U.S. ATTORNEY
District of Columbia District
Judiciary Center
555 4th Street, NW
Washington, D.C. 20530

**Alberto R. Gonzales**
ATTORNEY GENERAL
U.S. Department of Justice
Robert F. Kennedy Building
Tenth Street & Constitution Ave., NW
Room 5111
Washington, D.C. 20530

**George W. Bush**
PRESIDENT, UNITED STATES OF AMERICA
The White House
1600 Pennsylvania Avenue, NW
Washington, D.C. 20301-1000

**Donald Rumsfeld**
SECRETARY, U.S. DEP'T. OF DEFENSE
1000 Defense Pentagon
Washington, D.C. 20301-1000

**Army Brig. Gen. J. Hood**
COMMANDER, JOINT TASK FORCE-GTMO
JTF-GTMO
APO AE 09360

**Brig. Gen. Hood**
UNITED STATES ARMY
Army Pentagon
Washington, D.C. 20310-0200

**Army Col. Bumgarner**
COMMANDER, JDOG
JTF-GTMO
APO AE 09360

**Army Col. Bumgarner**
UNITED STATES ARMY
Army - Pentagon
Washington, D.C. 20310-0200

On this the 17th day of November, 2005.

_____
Beth D. Jacob

NY\ 5049820.2