IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MOHAMMED BIN JAIED ALADI )
AL MOHAMMED AL SUBAIE, *et al.*, )
   Petitioners, )
) Civil Action No. 2216-05 (RCL)
   *v.* )
)
GEORGE W. BUSH, *et al.*, )
   Respondents. )

**PETITIONERS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR
ORDER REQUIRING RESPONDENTS TO PROVIDE COUNSEL FOR
PETITIONERS AND THE COURT WITH 30-DAYS' ADVANCE NOTICE OF
ANY INTENDED REMOVAL OF PETITIONERS FROM GUANTANAMO**

Respondents' opposition to providing 30 days advance notice rests on a series of erroneous factual and legal assertions. Among other things, Respondents claim that:

- "Petitioners' motion . . . fails to establish a factual or legal basis for the relief sought." (Opp. Mem. at 1).

- "[R]elease from United States custody will give petitioners all the relief they can seek through habeas." (Opp. Mem. at 10).

- "[T]he very prospect of judicial review, as exemplified by an advance notice requirement, causes separation-of-powers harm by undermining the ability of the Executive Branch to speak with one voice in its dealings with foreign nations." (Opp. Mem. at 20).

- "[R]espondents' policy and practices governing transfer and repatriation of Guantanamo detainees plainly do not violate any rights petitioners may have, constitutional or otherwise." (Opp. Mem. at 21).

In fact, as the clear majority of judges who have addressed these issues have determined, Respondents' conclusory assertions are not only unfounded but they misfocus the narrow and concrete inquiry presented by a 30-day notice motion. More particularly:

- In contrast to the generalized declarations presented by Respondents, Petitioners -- detainees from Saudi Arabia -- have relied on the United States government's *own* reports about human rights conditions in prisons in Saudi Arabia. Respondents simply ignore these reports, as they similarly ignore the impact of *Rasul v. Bush*, 124 S. Ct. 2686 (2004) on Petitioners' legal right to the relief sought.

- A number of judges have understandably described as "perplexing" Respondents' claim that transfer to a prison in a foreign county achieves the relief sought in Petitioners' habeas petitions. This argument is also inconsistent with Federal Rule of Appellate Procedure 23(a).

- All that Petitioners seek in their motion is *notice* of Respondents' intent to remove them from Guantanamo, not to challenge their transfer. Respondents' "vague premonitions" that such relief would somehow harm the executive's ability to conduct foreign policy are premature, and devoid of any concrete support.

- Respondents' policy and practices regarding transfer do violate Petitioners' rights. Among other things, Respondents' refusal to provide advance notice of Petitioners' transfer from Guantanamo interferes with Petitioners' recognized right to counsel and to present claims to the Court.

## ARGUMENT

It is important at the outset to focus the preliminary injunction inquiry. Petitioners only seek adequate notice of intended transfer. An advance notice requirement does not ensure further proceedings. It would merely allow a given Petitioner an opportunity to consult with his counsel to determine whether there are any personal safety concerns arising from the proposed transfer. In certain instances, the transfer may be welcome news to a prisoner who has spent many years isolated at Guantanamo. In other instances, there may be real life and safety concerns, and a fundamental need and right to challenge the transfer. This is "a narrow and discrete request that would impose no burden on the Government." *Al-Joudi v. Bush*, No. 04-301 (GK), 2005 WL 774847 at *5 (D.D.C. Apr. 4, 2005). At most, Petitioners, who have been

detained at Guantanamo for years, seek a delay of only 30 days before being transferred to a prison where they may be tortured or otherwise abused. It is in this context -- and not that of some future motion that may or may not be filed -- that irreparable harm to Petitioners, harm to Respondents, likelihood of success on the merits, and public interest considerations must be evaluated.

**I.    Irreparable Harm**

Absent notice, Petitioners stand to suffer irreparable harm in two ways:

> First, [t]hey face[] the possibility of transfer to a country where [t]he[y] might be tortured or indefinitely confined, which undeniably would constitute irreparable harm. Second, Petitioner[s] face[] the threat of irreparable harm based on the potential elimination of [their] habeas claims.

*Al-Joudi*, 2005 WL 77487 at *4. See also *Abdah v. Bush*, No. 04-1254 (HHK), 2005 WL 711814 at *4 (D.D.C. Mar. 29, 2005). Respondents sidestep the first issue and belittle the second.

**A.    Respondents' Opposition Does Not Specifically Address The Transfer Of These Petitioners To Their Home Country Of Saudi Arabia.**

Relying simply on generalized declarations that do not specifically address the transfer of detainees at Guantanamo to Saudi Arabia,[1] Respondents simply ignore the reports of the United States State Department (which is also part of the Executive Branch) cited by Petitioners that raise concerns about the abuse of prisoners in Saudi Arabia:

> [I]n August 2005, the United States State Department concluded that "the United States remains concerned about human rights conditions in Saudi Arabia. Principal human rights problems include abuse of prisoners. . ." Dep't of State, Bureau of Near Eastern Affairs August 2005, Background Note: Saudi Arabia, at http://www.state.gov/r/pa/ei/bgn/3584.htm. In [a] report released on February 28, 2005, the State Department found that "Security forces continued to abuse detainees and prisoners, arbitrarily arrest, and hold persons in incommunicado

---

[1]    "While the Government presents declarations that attempt to mitigate [Petitioner's] concerns, they neither refute Petitioners' claims nor render them frivolous." *Al-Joudi*, 2005 WL 77487 at *4.

> detention* * * [A]uthorities reportedly at times abused detainees, both citizens and foreigners. Ministry of Interior officials were responsible for most incidents of abuse of prisoners, including beatings, whippings, and sleep deprivation. In addition, there were allegations of beatings with sticks and suspension from bars by handcuffs. There were allegations that these practices were used to force confessions from prisoners." Dep't of State, *Country Reports on Human Rights Practices, Saudi Arabia, 2004* §1(c) at http://www.state.gov/g/drl/rls/hrrpt/2004/41731.htm.

(Pet. Mem. at 4). Relying on similar government reports, the Court concluded, appropriately, in *Al-Joudi*:

> [T]he Government admits that 65 of the 211 detainees transferred to date have been transferred for detention, not release. Several of the 65 have been transferred to countries that our own State Department has acknowledged torture prisoners, including Pakistan, Saudi Arabia, and Morocco. See Country Reports on Human Rights Practices – 2004, available at http://www.state.gov/g/drl/rls/hrrpt/2004. *** [T]he Government was unable to provide any details about the type or form of "assurances" given, the scope of the monitoring that takes place after transfer, or the consequences of noncompliance. *** In short, the threatened injury is not merely remote and speculative; it is a serious potential threat.

2005 WL 77487 at *4 (footnote omitted).[2]

### B. Transfer To A Foreign Prison Is Not The Relief Sought In Petitioners' Habeas Petitions.

Respondents claim that "relinquishment from United States custody (which occurs in every... transfer or repatriation) represents the full extent of relief that petitioners could obtain in habeas." (Opp. Mem. at 13). This superficial and "overly simplistic" assertion is clearly wrong:

> Petitioners ultimately seek total freedom from all custody, not just United States custody. They can only obtain such relief in this litigation if the Court determines

---

[2] In earlier denying a motion for 30-day advance notice, in *Attash v. Bush*, No. 05-1592 (RCL) (Sept. 1, 2005)(Ex.A), this Court relied on the decision in *Al-Anazi v. Bush*, 370 F. Supp. 2d 188 (D.D.C. April 21, 2005). However, *Al-Anazi* did not address such government reports, referencing only "the newspaper articles on which petitioners stake their motion" and "the record with which it [was] presented." 370 F. Supp. at 196. Further, the Court in *Al-Anazi* acknowledged that "[g]enerally, other judges have ordered some form of the requested 30-days' notice." *Id.* at 192 (citation omitted).

> that their underlying detention was unconstitutional or illegal. Furthermore, a determination by a United States court that Petitioners are not enemy combatants might carry significant weight in their home country, thereby facilitating release from custody if they were transferred for continued detention. Finally, on the most human level, proud people have a strong interest in clearing their names from association with acts of violence and terrorism.

*Al-Joudi*, 2005 WL 774847 at *3 n. 7. *See also Abdah*, 2005 WL 711814 at *4 n. 3 (Respondents' proposition "is perplexing, because it seems beyond question that advocating for release into freedom is not equivalent to advocating for transfer from ongoing detention in one locale to ongoing detention in another").

Indeed, if involuntarily removed from Guantanamo, Petitioners would risk losing their right -- either as a legal or a practical matter -- to adjudicate their habeas claims in the federal court whose jurisdiction they have properly invoked. *See, e.g., El-Banna v. Bush*, No. 04-1144 (RWR) (D.D.C. Apr. 8, 2005) (Ex.B). ("The outcome petitioners fear, if realized, would improperly subvert the court's ability to adjudicate these actions on their merits"); *Al-Oshan v. Bush*, No. 05-520 (RMU) (D.D.C. Mar. 31, 2005)(Ex. C) (divesting the court of jurisdiction would abuse the processes now put in place for the purpose of adjudicating matters on the merits; the court will "guard against depriving the processes of justice of their suppleness of adaptation to varying conditions" (quoting *Landis v. North American Co.*, 299 U.S. 248, 258 (1936)).

## II.  Harm To Respondents

In contrast to the significant harm to Petitioners resulting from the absence of notice, the harm to Respondents from providing such notice is minimal, if not nonexistent. Beyond Respondents' premature and "vague premonitions" that providing notice would harm the

executive's ability to conduct foreign policy,[3] there is simply no basis to conclude that a 30-day notice will intrude upon executive authority:

As the Court in *Abdah* held:

> The preliminary injunction Petitioners seek will not require, or even enable, the court to take the two *specific* actions which Respondents' declarants warn against: forcing State Department officials to "unilaterally . . . disclose outside appropriate Executive branch channels its communications with a foreign government relating to particular mistreatment or torture concerns," Resp'ts' Opp'n. Prosper Decl. ¶ 10, and publicly disclosing the facts gathered and analyses prepared by various State Department offices, or bringing these findings "to the attention of officials and others in foreign States..." *Id.* ¶ 11.

*Abdah*, 2005 WL 711814 at *5. *See also Al-Joudi*, 2005 WL 774847 at *5-6:

> [G]ranting Petitioner's request for 30 days' notice of transfer would not require the Court to second-guess foreign policy decisions of the executive, would not require the Government to divulge information relating to its negotiations with foreign governments, and would not prevent the Government from speaking with one voice.
>
> In weighing the respective hardships imposed upon the parties, the balance clearly tilts in favor of the Petitioner. The requested relief does not constitute even a minimal burden on the Government; at most, it would require the Government to file a few pieces of paper. Such a minimal consequence does not outweigh the imminent threats of indefinite detention, potential torture, and the elimination of Petitioner's claims before this Court. (footnote omitted).

The harm posited by Respondents is not caused by the provision of notice but is connected to a hypothetical motion.

---

[3] Respondents do not explain how providing notice to Petitioners could possibly interfere with the conduct of foreign policy when at least eight different judges have required that such notice be provided. See, e.g., *Hatim v. Bush*, No. 05-1429 (RMU) (D.D.C. Aug.22, 2005)(Ex. D); *Paracha v. Bush*, No. 04-2022 (PLF) (D.D.C. June 16, 2005) (Ex. E); *Kurnaz v. Bush*, No. 04-1135 (ESH), 2005 WL 839542 (D.D.C. Apr. 12, 2005); *El-Banna v. Bush*, No. 04-114 (RWR) (D.D.C. Apr. 8, 2005) (Ex. B); *El-Mashad v. Bush*, No. 050270 (JR) (D.D.C. Apr. 7, 2005)(Ex. F); *Al-Joudi v. Bush*, No. 04-301 (GK), 2005 WL 774847 (D.D.C. Apr. 4, 2005); *Abdah v. Bush*, No. 04-1254 (HHK), 2005 WL 711814 (D.D.C. Mar 29, 2005); *Abdah v. Bush*, No. 04-1254 (HHK) (D.D.C. Mar. 12, 2005) (Ex. G) (Judge Collyer, as motions judge, granting petitioners' *ex parte* motion for TRO requiring 30-days' notice to counsel prior to removal).

### III. Likelihood Of Success

#### A. Petitioners Have Raised Questions Going To The Merits So Serious, Substantial, Difficult And Doubtful, As To Make Them A Fair Ground For Litigation.

Contrary to Respondents' assertion, Petitioners have demonstrated a substantial likelihood of success on the merits of their habeas claims. The Supreme Court has held that the Guantanamo prisoners have the right to invoke the habeas jurisdiction of this Court and that their claims of violations of Constitutional and international law state a claim upon which relief can be granted. *Rasul v. Bush*, 542 U.S. 466, 483 n. 15 (2004). That there is a disagreement among the judges of this Court concerning the status of the rights Petitioners assert simply confirms that Petitioners' claims meet the "fair ground for litigation" standard. Plaintiff's right to relief need not be absolutely certain; it will ordinarily be sufficient that plaintiff "has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation." In such circumstances, "[t]here is a substantial equity, and need for judicial protection whether or not [Petitioner] has shown a mathematical probability of success." *Washington Metro Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977). *See also Abdah*, 2005 WL 711814 at *4-5; *Al-Joudi*, 2005 WL 774847 at *4-5.

#### B. Valid Legal Bases Exist For An Order Requiring Advance Notice of Transfer.

##### 1. Petitioners Have Properly Invoked The All Writs Act.

Respondents deny that transfers of Guantanamo detainees are undertaken in order to thwart the jurisdiction of the Court. (Opp. Mem. at 9 n.7). But Respondents' motives, whatever they may be, are peripheral to the instant motion. This Court has jurisdiction over Petitioners' habeas petition under 28 U.S.C. § 2241, and, in the exercise of that historic jurisdiction, must

determine the lawfulness of their detention, including any intended transfer from Guantanamo to another country. Petitioners thus have properly asked the Court to invoke its powers under the All Writs Act, 28 U.S.C. § 1651, to protect its jurisdiction in the matter. *See, e.g., SEC v. Vision Communications, Inc.,* 74 F.3d 287, 291 (D.C. Cir. 1996).

Indeed, the habeas jurisdiction of the Court would have little meaning if the Court could not preserve that jurisdiction to adjudicate Petitioners' claims. *See Michael v. INS,* 48 F.3d 657, 664 (2d Cir. 1995) (issuing order to prevent government from deporting individual before federal courts could review legality of underlying order of deportation); *see also Brown v. Vasquez,* 743 F. Supp. 729, 732 (C.D. Cal. 1990) (petitioner properly invoked court's authority under the All Writs Act even though only "the potential for habeas jurisdiction exists"), *aff'd,* 952 F.2d 1164 (9th Cir. 1991); *cf. Rumsfeld v. Padilla,* 124 S. Ct. 2711, 2721 (2004) ("[W]hen the government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release.") (citing *Ex parte Endo,* 323 U.S. 283 (1944)).

### 2. The Federal Rules Of Appellate Procedure Also Support An Advance Notice Requirement.

The Court's authority to require advance notice of any intended transfer of Petitioners from Guantanamo draws further support from Federal Rule of Appellate Procedure 23(a). Rule 23(a) provides:

> Pending review of a decision in a habeas corpus proceeding commenced before a court, justice, or judge of the United States for the release of a prisoner, the person having custody of the prisoner must not transfer custody to another unless a transfer is directed in accordance with this rule. When, upon application, a custodian shows the need for a transfer, the court, justice, or judge rendering the decision under review may authorize the transfer and substitute the successor custodian as a party.

Rule 23(a) is not limited to final judgments but applies pending appellate review of any "decision" in a habeas proceeding. Its purpose is "to prevent prison officials from impeding a prisoner's attempt to obtain habeas corpus relief by physically removing the prisoner from the territorial jurisdiction of the court in which a habeas petition is pending." *Goodman v. Keohane*, 663 F.2d 1044, 1047 (11th Cir. 1981); *see also Jago v. U.S. Dist. Ct.*, 570 F.2d 618, 623 (6th Cir. 1978) ("We believe that a proper understanding of the history of Rule 23 supports a conclusion that it [like Fed. R. App. P. 9(b)] preserves in the district judge authority to issue one or more orders regarding the custody or enlargement of a prisoner pending the review of the decision in the habeas corpus action.").

Although Petitioners' cases are not technically on appeal, the District Court previously issued a stay pending appellate resolution of other Guantanamo detainee cases because those cases raise many of the same controlling legal issues as Petitioners with respect to the lawfulness of their detention. Thus, for purposes of Petitioners' argument here under Rule 23(a), their cases should be treated as if they were on appeal, and the language and purpose of this rule demonstrate that advance notice must be provided to their counsel and the Court before they may be transferred from Guantanamo. *See Abdah*, 2005 WL 711814 at *5 ("transfer of Petitioners without notice and leave of court is forbidden by Fed. R. App. P. 23(a)").

### 3. Petitioners Have A Right Of Access To The Court And Counsel.

The right of access to the courts is "well established." *Lewis v. Casey*, 518 U.S. 343, 350 (1996). It is "the right conservative of all other rights, and lies at the foundation of orderly government." *Chambers v. Baltimore & Ohio R.R. Co.*, 207 U.S. 142, 148 (1907). The Supreme Court has stated that the right of access to the courts to claim the protection of the law is the "very essence of civil liberty," and ensures that our government remains "a government of laws, and not of men." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 163 (1803) (Marshall, C.J.); *cf.*

*Hamdi v. Rumsfeld*, 124 S. Ct. 2633, 2650 (2004) (plurality opinion) ("[A] state of war . . . is not a blank check for the President . . ."). At its core, this right forbids the government from "actively interfering" with a person's "presentation of claims to the courts." *Lewis*, 518 U.S. at 349-50.

In *Rasul*, the Supreme Court held that the Guantanamo detainees have the right to file habeas corpus petitions in federal district court to challenge the lawfulness of their detention. 542 U.S. at 484. Concluding that access to counsel was necessary for those proceedings to be meaningful, the District Court subsequently determined in *Al Odah v. United States*, 346 F. Supp. 2d 1 (D.D.C. 2004) that the detainees "are entitled to be represented by counsel" in their habeas proceedings. *Id* at 5-7. Respondents' refusal to provide advance notice of Petitioners' intended transfer from Guantanamo plainly interferes with Petitioners' right to counsel and their right to present claims to the Court.

### 4.  Petitioners Have Substantive Rights To Enforce In This Court.

Respondents claim that Petitioners have no cognizable rights with respect to their transfer from Guantanamo to a foreign country. (Opp. Mem. at 1). The Court need not determine now what rights Petitioners possess to decide the narrow question presented by the instant motion, which seeks only to preserve the Court's jurisdiction over the matter. However, Respondents' assertion that Petitioners would have no legal basis to challenge their transfer is incorrect. Petitioners have rights under the United States Constitution and international law which can be enforced through the instant habeas proceeding. And, absent a direct order from the Court requiring advance notice of their intended transfer from Guantanamo, Petitioners will be deprived of the opportunity to assert those rights until it is too late.

The Supreme Court made clear in *Rasul* that the Guantanamo detainees have cognizable rights under the United States Constitution. As the Court stated: "Petitioners' allegations -- that although they have engaged neither in combat nor acts of terrorism against the United States, they have been held in Executive detention for more than two years in territory subject to the long-term, exclusive jurisdiction and control of the United States without access to counsel and without being charged with any wrongdoing -- unquestionably describe 'custody in violation of the Constitution or law or treaties of the United States.'" 542 U.S. at 483 (quoting 28 U.S.C. § 2241). In denying the government's motion to dismiss habeas petitions filed by a number of Guantanamo detainess after *Rasul*, Judge Joyce Hens Green held that the detainees are protected by the Due Process Clause of the Fifth Amendment. *In re Guantanamo Detainee Cases*, 355 F. Supp. 2d 443, 464 (D.D.C. 2005) (citing *Rasul*); *see also id.* ("[T]here can be no question that the Fifth Amendment right asserted by the Guantanamo detainees in this litigation -- the right not to be deprived of liberty without due process of law -- is one of the most fundamental rights recognized by the U.S. Constitution."). While this Court has not yet determined whether to apply Judge Green's ruling to this case, and another court of this District has disagreed with Judge Green's conclusion, *Khalid v. Bush*, 355 F. Supp. 2d 311 (D.D.C. 2005), Petitioners have certainly established a "fair ground for litigation" on this issue.

Petitioners also have rights under international law. For example, the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"), which implements the Convention Against Torture and Other Cruel and Inhuman or Degrading Treatment or Punishment ("CAT"), 1465 U.N.T.S. 85 (Dec. 10 1984), provides that "[i]t shall be the policy of the United States not to expel, extradite, or otherwise effect the involuntary return of any person to a country in which there are substantial grounds for believing the person would be in danger of being subjected to

torture, regardless of whether the person is physically present in the United States." Pub. L. No. 105-277, § 2242(a), 112 Stat. 2681-822 (1998). Petitioners also have cognizable rights under customary international law. Customary international law is part of the law of the United States. *The Paquete Habana*, 175 U.S. 677, 700 (1900); *see also* Restatement (Third) of the Foreign Relations Law of the United States § 111, cmt. e (1987) ("Restatement (Third)") ("Cases arising under . . . customary international law . . . [are] within the Judicial Power of the United States under Article III, Section 2 of the Constitution."). The prohibition against returning an individual to another country to face harm -- known as the principle of *non-refoulement* -- is well established under customary international law. *See, e.g.*, Guy S. Goodwin-Gill, *The Refugee in International Law* 143 (2d ed. 1996); *see also* Restatement (Third) § 702.

### IV.  Public Interest

Respondents argue that the public interest is served by allowing the executive branch to act unimpeded with respect to the disposition of detainees. Opp. Mem. at 21.[4] However, as the Supreme Court has made clear, the public interest is not served by unilateral executive action but, rather, by involvement of all branches of government, including the judiciary. *Hamdi v. Rumsfeld*, 542 U.S. 507, 124 S. Ct. 2633, 2650 (2004) (plurality op.) ("Whatever power the United States Constitution envisions for the Executive in its exchanges with other nations or with enemy organizations in times of conflict, it most assuredly envisions a role for all three branches when individual liberties are at stake."); *Rasul*, 542 U.S. at 473-75 (describing historic role served by habeas corpus in guaranteeing judicial review of executive detention); *see also United States v. Hastings*, 461 U.S. 499, 527 (1983) (describing the "strong public interest in the integrity of the judicial process"); *United States v. Atkinson*, 297 U.S. 157, 160 (1936) (noting

---

[4]     As Judge Kennedy noted in *Abdah*, "Respondents simply conflate the public interest with their own position." 2005 WL 711814 at *6.

the "public interest" in correcting errors that would "seriously affect the fairness, integrity, or public reputation of judicial proceedings"). Indeed, "[i]t is always in the public interest to prevent the violation of a party's constitutional rights." *G&V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994).

The Supreme Court has repeatedly stressed "the fundamental importance of the writ of habeas corpus in our constitutional scheme," *Johnson v. Avery*, 393 U.S. 483, 485 (1969), and that "there is no higher duty than to maintain it unimpaired." *Bowen v. Johnston*, 306 U.S. 19, 26 (1939). Respondents' refusal to provide advance notice of intended transfer of detainees from Guantanamo undercuts these firmly established principles  The public interest thus strongly favors ensuring that Petitioners' counsel and the Court are provided with advance notice of their intended transfer from Guantanamo.

## CONCLUSION

For the reasons discussed above, and in their original memorandum, Petitioners' motion should be granted.

Dated: New York, New York
       December 2, 2005

                                      Respectfully submitted,

                                      Counsel for Petitioners:

                                      */s/ signature*

                                      Charles H.R. Peters
                                      Beth D. Jacob
                                      Antony S. Burt
                                      David H. Anderson
                                      Michael W. Drumke
                                      Donald A. Klein
                                      Brian J. Neff
                                      Seth D. Lamden

                                      SCHIFF HARDIN LLP
                                      623 Fifth Avenue
                                      New York, New York 10022
                                      Tel: (212) 753-5000
                                      Fax: (212) 753-5044
                                          and
                                      6600 Sears Tower
                                      Chicago, IL 60606
                                      Tel: (312) 258-5500
                                      Fax: (312) 258-5600

                                      *Of Counsel*
                                      Barbara J. Olshansky (NY0057)
                                      Director Counsel
                                      Tina Monshipour Foster (TF5556)
                                      Gitanjali S. Gutierrez (GG1234)
                                      CENTER FOR CONSTITUTIONAL RIGHTS
                                      666 Broadway, 7th Floor
                                      New York, New York 10012
                                      Tel: (212) 614-6439
                                      Fax: (212) 614-6499

NY\ 5059961.2

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been served by Federal Express to the following person:

**Robert J. Katerberg**
ATTORNEY
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW
Washington, D.C. 20530

On this the 2nd day of December, 2005.

_____
Joel M. Elfman

NY\ 5049820.2