# EXHIBIT A

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **HASSAN BIN ATTASH, et. al.,** ) | |
| ) | |
| **Petitioners,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 05-1592 (RCL)** |
| ) | |
| **GEORGE W. BUSH,** ) | |
| **President of the United States, et. al.,** ) | |
| ) | |
| **Respondents.** ) | |

### ORDER

Having considered the Respondent's Motion to Stay Proceedings Pending Related Appeals and for Continued Coordination, as well as the entire record in this case, and it appearing that good cause exists for granting the motion, it is hereby

ORDERED that the above-captioned case is stayed pending resolution of all appeals in Khalid v. Bush, Boumediene v. Bush, Nos. 04-CV-1142 (RJL), 355 F. Supp. 2d 311 (D.D.C. 2005), appeals docketed, Nos. 05-5062, 05-5063 (D.C. Cir. Mar 2, 2005), and In re Guantanamo Detainee Cases, No. 02-CV-0299, et. al., 355 F. Supp. 2d 443 (D.D.C. 2005), appeal on petition for interlocutory appeal, No. 05-5064 (D.C. Cir. Mar. 10, 2005). It is further

ORDERED that respondent's obligation to show cause is STAYED.

This stay shall not, however, prevent the parties from availing themselves of the procedures set forth below, nor shall it bar the filing or disposition of any emergency relief. It is further

ORDERED that the Court having considered petitioners' Motion for Preliminary

Injunction Requiring Advance Notice of Transfer or Release, and the opposition hereto, it is hereby ORDERED that petitioners' Motion for Preliminary Motion is DENIED for the reasons well stated by Judge Bates in <u>Al-Anazi v. Bush</u>, 370 F. Supp. 2d 188 (D.D.C. April 21, 2005).  It is further

      ORDERED that the Court grants the Petitioners' Motion for Protective Order, and enters by way of reference, the protective order and supplementary orders previously entered in <u>In re Guantanamo Detainee Cases</u>, No. 02-CV-0299, <u>et. al.</u>, by Judge Hens Green.  These include the Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba, first issued on November 8, 2004; the Order Addressing Designation Procedures for "Protected Information," entered on November 10, 2004; and the Order Supplementing and Amending Filing Procedures Contained in November 8, 2004 Amended Protective Order, issued on December 13, 2004.

      SO ORDERED.


Signed by Royce C. Lamberth, United States District Judge, September 1, 2005.

# EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JAMIL EL-BANNA <u>et</u> <u>al</u>., | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-1144 (RWR) |
| | ) | |
| GEORGE W. BUSH <u>et</u> <u>al</u>., | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |
| HANI SALEH RASHID ABDULLAH <u>et</u> <u>al</u>., | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-23 (RWR) |
| | ) | |
| GEORGE W. BUSH <u>et</u> <u>al</u>., | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |
| ABDULLAH IBRAHIM ABDULLAH AL RASHAIDAN <u>et</u> <u>al</u>., | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-586 (RWR) |
| | ) | |
| GEORGE W. BUSH <u>et</u> <u>al</u>., | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

-2-

### MEMORANDUM ORDER

Petitioners Jamil El-Banna, Bisher Al-Rawi, Martin Mubanga,[1] Hani Abdullah, Rami Al-Oteibi,[2] and Abdullah Al Rashaidan,[3] in three separate cases seek writs of habeas corpus, challenging the legality of their detention by the United States at Guantanamo Bay Naval Base, Cuba.  Respondents moved for a stay of proceedings in each case pending resolution of the appeals in In re Guantanamo Detainee Cases, — F. Supp. 2d — , 2005 WL 195356 (D.D.C. Jan. 31, 2005), appeal docketed, No. 05-8003 (D.C. Cir. March 10, 2005), and Boumediene v. Bush et al., — F. Supp. 2d — , 2005 WL 100924 (D.D.C. Jan. 19, 2005), appeal docketed, No. 05-5062 (D.C. Cir. March 10, 2005).  A primary purpose of a stay pending resolution of the issues on appeal is to preserve the status quo among the parties.  Washington Area Metro. Transit Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 844 (D.C. Cir. 1977) (a stay pending appeal is preventative or protective, and seeks to maintain the status quo pending a final determination of issues on appeal); see Warm Springs Dam Task Force v. Gribble, 417 U.S. 1301, 1310 (1974) (granting stay pending appeal to

------------------------

[1]  Petitioner-detainees in Civil Action No. 04-1144.

[2]  Petitioner-detainees in Civil Action No. 05-23.

[3]  Petitioner-detainee in Civil Action No. 05-586.

-3-

maintain the status quo between the parties). In Civil Action No. 04-1144, Judge Joyce Hens Green entered a stay order on February 3, 2005. (Dkt. # 122.) In Civil Action No. 05-23, a stay was entered on March 16, 2005 that nevertheless allowed petitioners to seek from this court emergency relief in appropriate circumstances, such as when petitioners reasonably believe they will be removed from the jurisdiction of this court. (Dkt. # 16).[4] In Civil Action No. 05-586, respondents' motion to stay the proceedings is pending.

In each action, petitioners have moved for a preliminary injunction to enjoin respondents from transferring any of the petitioner-detainees from United States custody at Guantanamo Bay Naval Base to any other location or any other custodian without providing 30 days notice of the intended transfer or removal. Petitioners fear that respondents may involuntarily "render" the detainees to other countries, where they may be subject to continued detention without due process of law or to mental or physical abuse, and, by means of transfer, divest this court of jurisdiction either as a practical or legal matter. Respondents oppose petitioners' motions for a preliminary injunction.

_____

[4] A protective order was entered in that case on the same day. (Dkt. # 17.)

-4-

Petitioners' fears do not appear fanciful. Petitioners cite to a report of an investigative journalist describing the rendition of several named individuals who have been transferred in and out of United States custody, a practice respondents have not denied in these proceedings. Further, respondents concede they have transferred custody of many Guantanamo detainees to foreign sovereigns and assert that such transfer divests this court of jurisdiction over pending habeas corpus petitions. Another press report cited by petitioners, and not denied by respondents, indicates that respondents either have, or had, plans to accelerate the transfer of Guantanamo detainees to other sovereigns and other locations.

The outcome petitioners fear, if realized, would improperly subvert the court's ability to adjudicate these actions on their merits. See Rasul v. Bush, 124 S. Ct. 2686, 2698 (2004) ("We therefore hold that [28 U.S.C.] § 2241 confers on the District Court jurisdiction to hear petitioners' habeas corpus challenges to the legality of their detention at the Guantanamo Bay Naval Base."). Furthermore, such a result would nullify the stay's purpose of preserving the status quo between the parties.

"It is well established that 'the federal courts may and should take such action as will defeat attempts to wrongfully deprive parties entitled to sue in the Federal courts for the

-5-

protection of their rights in those tribunals.'" <u>Abu Ali v.</u>
<u>Ashcroft</u>, 350 F. Supp. 2d 28, 54 (D.D.C. 2004) (quoting <u>Alabama</u>
<u>Great S. R. Co. v. Thompson</u>, 200 U.S. 206, 218 (1906)). In
addition, a court may, in appropriate situations, specify
protective conditions in balancing the hardship necessarily
imposed on the party whose suit or execution of judgment has been
stayed pending appeal. <u>Cooks v. Fowler</u>, 459 F.2d 1269, 1272-73 &
n.27 (D.C. Cir. 1971) (affirming condition of stay requiring
tenant appealing judgment to deposit funds in court registry
pending appeal); <u>see</u> <u>also</u>, <u>City of Portland, Or. v. Federal</u>
<u>Maritime Comm'n</u>, 433 F.2d 502, 504 (D.C. Cir. 1970) (directing
the proponent of a stay in a case challenging shippers' exclusion
of one city's port from service to "be prepared to state reasons
why this court should not impose a conditional stay requiring the
rotation of service among the ports involved pending final review
and determination."); <u>Scott v. Scott</u>, 382 F.2d 461, 462 (D.C.
Cir. 1967) (discussing a stay of execution of judgment
conditioned upon support payments); <u>Center for Int'l</u>
<u>Environmental Law v. Office of the U.S. Trade Rep.</u>, 240 F. Supp.
2d 21, 23 (D.D.C. 2003) (conditioning stay pending appeal on
party seeking an expedited appeal). Where, as here, the
condition imposed on the proponent of the stay is "neither heavy
nor unexpected," imposing a protective condition is well within a

-6-

court's discretion. <u>Cooks v. Fowler</u>, 459 F.2d at 249 (quoting

<u>Bell v. Tsintolas Realty Co.</u>, 430 F.2d at 482 (D.C. Cir. 1970)

(stating "[w]e have little doubt that . . . [a court] may fashion

an equitable remedy to avoid placing one party at a severe

disadvantage during the period of litigation")).

> Therefore, here
>
> the court will "guard against depriving the processes
> of justice of their suppleness of adaptation to varying
> conditions." <u>Landis v. North American Co.</u>, 299 U.S.
> 248, 256 (1936). Coextensive with a district court's
> inherent power to stay proceedings is the power to
> craft a stay that balances the hardships to the
> parties. <u>Id</u>. at 255 (noting concern regarding a stay
> causing "even a fair possibility . . . [of] damage to
> some one else."); <u>see also</u> <u>Clinton v. Jones</u>, 520 U.S.
> 681, 707 (1997) (noting that "burdens [to the parties]
> are appropriate matters for the District Court to
> evaluate in its management of the case.").

<u>Al-Oshan v. Bush</u>, Civil Action No. 05-520 (D.D.C. Mar. 31, 2005)

(Urbina, J.) (Order, Dkt. # 12). Accordingly, it is hereby

ORDERED that respondents' motion for a stay in Civil Action

No. 05-586 (Dkt. # 5) be, and hereby is, GRANTED in part and

DENIED in part. The proceedings in Civil Action No. 05-586 are

STAYED pending resolution of the appeals pending before the

United States Court of Appeals for the District of Columbia

Circuit, in <u>In re Guantanamo Detainee Cases</u> and <u>Boumediene v.

Bush et al.</u>, except that petitioners in Civil Action Nos. 04-1144

and 05-586 may seek emergency relief from this court in

-7-

appropriate circumstances, such as when petitioners have reason

to believe that they are facing the possibility of continued

detention at the request of the United States in a location that

does not provide access to this court.  It is further

ORDERED that in all three cases captioned above,

respondents, their agents, servants, employees, confederates, and

any persons acting in concert or participation with them, or

having actual or implicit knowledge of this Order by personal

service or otherwise, may not transfer or remove the detained

petitioners from United States custody at Guantanamo Bay unless

this court and counsel for petitioners receive thirty days'

advance notice of such transfer or removal.  It is further

ORDERED that, given the ongoing conduct of combatant status

review tribunals, respondents shall file factual returns relating

to each detained petitioner within 30 days after entry of a

protective order in that petitioner's action, unless such returns

have been filed already.  It is further

ORDERED that the motions for a preliminary injunction in all

three cases captioned above (Dkt. # 128, Civil Action No. 04-

1144; Dkt. # 15, Civil Action No. 05-23; Dkt. # 3, Civil Action

No. 05-586) be, and hereby are, DENIED as moot.

-8-

SIGNED this 8th day of April, 2005.

_____/s_____
RICHARD W. ROBERTS
United States District Judge

# EXHIBIT C

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| SALEH ABDULLA AL-OSHAN *et al.*, | : | | |
| | : | | |
| Petitioners/ | : | | |
| Plaintiffs, | : | | |
| | : | | |
| v. | : | Civil Action No.: | 05-0520 (RMU) |
| | : | | |
| GEORGE W. BUSH *et al.*, | : | Document Nos.: | 3, 11 |
| | : | | |
| Respondents/ | : | | |
| Defendants | : | | |

### MEMORANDUM ORDER

#### GRANTING MOTION FOR STAY;
#### ORDERING 30 DAYS' NOTICE OF ANY INTENT TO MOVE PETITIONERS;
#### DENYING WITHOUT PREJUDICE MOTION FOR PRELIMINARY INJUNCTION AS MOOT

This matter comes before the court on the respondents' motion to stay proceedings pending related appeals and for continued coordination. On January 19, 2005, Judge Leon issued opinions in *Khalid v. Bush* and *Boumediene v. Bush* granting the government's motion to dismiss petitions for writ of habeas corpus brought by detainees at the United States Naval Station at Guantanamo Bay, Cuba ("GTMO"). *Khalid v. Bush*, 355 F. Supp. 2d 311 (D.D.C. 2005). On January 31, 2005, Judge Green issued an opinion in *In re Guantanamo Cases*, granting in part and denying in part the government's motion to dismiss in eleven cases consolidated for the purpose of that motion. *In re Guantanamo Detainee Cases*, 355 F. Supp. 2d 443 (D.D.C. 2005). The petitioners in the above cases filed notices of appeal, and the D.C. Circuit has yet to issue an opinion. Accordingly, the state of the law in this circuit concerning the habeas rights of GTMO detainees is unclear.

1

In its motion to stay, the government points to the inefficiency of resolving the merits of the instant habeas petition prior to the D.C. Circuit issuing a ruling that will cover similar matters. Respondents' Mot. to Stay at 1-2. The government states that during the pendency of the stay the government will not "block counsel access to properly represented petitioners. To that end, respondents do not object to entry in these cases of the protective order previously entered in other Guantanamo detainee cases, along with appropriate supplementary orders, to permit such access." *Id.* at 2.

The court is well aware of the petitioners' concern that the government may remove the petitioners from GTMO in the near future, thereby divesting (either as a matter of law or *de facto*) the court of jurisdiction. Such an outcome would abuse the processes now put in place for the purpose of adjudicating matters on their merits. *See Rasul v. Bush*, 124 S.Ct. 2686 (2004). Accordingly, the court cannot allow such a scenario to unfold; the court will "guard against depriving the processes of justice of their suppleness of adaptation to varying conditions." *Landis v. North American Co.*, 299 U.S. 248, 256 (1936). Coextensive with the district court's inherent power to stay proceedings is the court's power to craft a stay that balances the hardships to the parties. *Id.* at 255 (noting concerns regarding the stay causing "even a fair possibility . . . [of] damage to some one else"); *see also Clinton v. Jones*, 520 U.S. 681, 707 (1997) (noting that "burdens [to the parties] are appropriate matters for the District Court to evaluate in its management of the case").

2

Accordingly, it is this 31st day of March, 2005,

**ORDERED** that the respondents' motion for stay is **GRANTED**; and it is

**FURTHER ORDERED** that the respondents, their agents, servants, employees, confederates, and any persons acting in concert or participation with them, or having actual or implicit knowledge of this Order by personal service or otherwise, may not remove the petitioners from GTMO unless this court and counsel for petitioners receive thirty days' advance notice of such removal; and it is

**FURTHER ORDERED** that the court **ENTERS** by way of reference the protective ordered previously entered in the other Guantanamo detainee cases. *E.g.*, Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba, *In re Guantanamo Detainee Cases*, No. 02-0299 (D.D.C. Oct. 8, 2004); and it is

**FURTHER ORDERED** that, in light of this order, the petitioners' motion for preliminary injunction is denied without prejudice as moot.

**SO ORDERED.**

RICARDO M. URBINA
United States District Judge

3

# EXHIBIT D

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| SALEED MOHAMMED SALEH | : | | |
| HATIM, *et al.*, | : | | |
| | : | | |
| Petitioners/ | : | | |
| Plaintiffs, | : | | |
| | : | | |
| v. | : | Civil Action No.: | 05-1429 (RMU) |
| | : | | |
| | : | | |
| GEORGE W. BUSH *et al.*, | : | Document Nos.: | 7, 10, 11 |
| | : | | |
| Respondents/ | : | | |
| Defendants | : | | |

## MEMORANDUM ORDER

### GRANTING RESPONDENT'S MOTION TO STAY; DENYING PETITIONER'S MOTION FOR PRELIMINARY INJUNCTION; GRANTING PETITIONER'S MOTION FOR ORDER TO SHOW CAUSE

This matter comes before the court on the respondents' motion to stay, the petitioners' motion for a temporary restraining order and the petitioners' motion for order to show cause. This case presents issues similar to those of other Guantanamo detainees litigating in this court. In brief, the petitioner seeks a temporary restraining order requiring the respondents to provide 30 days advance notice of any intent to transfer the petitioners from Guantanamo Bay Naval Base in Cuba.

On January 19, 2005, Judge Leon issued opinions in *Khalid v. Bush* and *Boumediene v. Bush* granting the government's motion to dismiss petitions for writ of habeas corpus brought by detainees at the United States Naval Station at Guantanamo Bay, Cuba ("GTMO"). *Khalid v. Bush*, 355 F. Supp. 2d 311 (D.D.C. 2005). On January 31, 2005, Judge Green issued an opinion in *In re Guantanamo Cases*, granting in part and denying in part the government's motion to

1

dismiss in eleven cases consolidated for the purpose of that motion. *In re Guantanamo Detainee Cases*, 355 F. Supp. 2d 443 (D.D.C. 2005). The petitioners in the above cases filed notices of appeal, and the D.C. Circuit has yet to issue an opinion. Accordingly, the state of the law in this circuit concerning the habeas rights of GTMO detainees is unclear.

The court is well aware of the petitioners' concern that the government may remove the petitioners from GTMO in the near future, thereby divesting (either as a matter of law or *de facto*) the court of jurisdiction. Such an outcome would abuse the processes now put in place for the purpose of adjudicating matters on their merits. *See Rasul v. Bush*, 124 S.Ct. 2686 (2004). Accordingly, the court cannot allow such a scenario to unfold; the court will "guard against depriving the processes of justice of their suppleness of adaptation to varying conditions." *Landis v. North American Co.*, 299 U.S. 248, 256 (1936). Coextensive with the district court's inherent power to stay proceedings is the court's power to craft a stay that balances the hardships to the parties. *Id.* at 255 (noting concerns regarding the stay causing "even a fair possibility . . . [of] damage to some one else"); *see also Clinton v. Jones*, 520 U.S. 681, 707 (1997) (noting that "burdens [to the parties] are appropriate matters for the District Court to evaluate in its management of the case").

Also before the court is the petitioners' motion for a writ of habeas corpus or an order to show cause why the writ should not issue. "A court, justice or judge entertaining an application for a writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243. The government takes the position that

2

[i]t makes no sense for proceedings related to the merits of these cases, such as the submission of factual returns in response to orders to show cause regarding the issuance of habeas writs, to go forward when decision from the D.C. Circuit on the related Guantanamo detainee appeals, which are proceeding in an expedited fashion, will determine the legal analyses applicable to the cases and, indeed, whether and how these cases should proceed.

Defs.' Mot. to Stay at 9. Furthermore, the government argues that requiring submission of factual returns "burdens the government's resources and risks the inadvertent disclosure of classified information." *Id.* at 11.

The fact that the D.C. Circuit has not yet issued its decision in the related appeals (or that this case is stayed pending the D.C. Circuit's decision on those appeals) does not prevent the government from processing the returns. On the contrary, the court determines that petitioners' counsel should be able to review the returns now so that they can develop their case and prepare for any consultation with their clients. As to the government's concerns regarding classified information, the protective order entered in this case will guard against any such inadvertent disclosures. Finally, the government's generic references to the expenditure of its resources and a "logistical burden," *id.*, does not persuade the court to delay ordering the returns; the court is confident that the government can handle this task.

Accordingly, it is this 22nd day of August, 2005,

**ORDERED** that the respondents' motion for stay is **GRANTED**; and it is

**FURTHER ORDERED** that the respondents, their agents, servants, employees, confederates, and any persons acting in concert or participation with them, or having actual or implicit knowledge of this Order by personal service or otherwise, may not remove the

3

petitioners from GTMO unless this court and counsel for petitioners receive thirty days' advance notice of such removal; and it is

**ORDERED** that, in light of this order, the petitioners' motion for preliminary injunction is denied without prejudice as moot, and it is

**FURTHER ORDERED** that the petitioners' motion for an order to show cause is granted, and it is

**ORDERED** that the respondents shall show cause[1] by Monday, August 29, 2005, why the writ should not be granted.

**SO ORDERED**.


RICARDO M. URBINA
United States District Judge

---

[1] "The person to whom the . . . order is directed *shall* make a return certifying the true cause of the detention." 28 U.S.C. § 2243.

4

# EXHIBIT E

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SAIFULLAH PARACHA,         ) | |
|                  ) | |
| Petitioner,        ) | |
|                  ) | |
| v.              ) | Civil Action No. 04-2022 (PLF) |
|                  ) | |
| GEORGE W. BUSH, et al.,     ) | |
|                  ) | |
| Respondents.      ) | |
|                  ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on petitioner's motion for a preliminary injunction ordering his removal from isolation and prohibiting his rendition and on petitioner's two applications for leave to proceed *in forma pauperis*.

In support of his motion for preliminary injunction, petitioner alleges that he is being held "in isolation and solitary confinement" at the United States Naval Base at Guantanamo Bay, Cuba, and that continued detention under such conditions threatens petitioner with irreparable harm. He also states that there is "a clear and present threat" that petitioner may be rendered into the custody of another country where he may face the threat of torture. Although petitioner's motion alleges he is being held in solitary confinement, the only support for this proposition is a single statement from petitioner's written submission to the Combatant Status Review Tribunal:

> I was kept in isolation from July 2003 -- Sept 20, 200 [year
> truncated, presumably 2004] and since Sept 20, 2004, I am in
> isolat[ion] cell in Guantanamo Bay Island.

Points and Authorities in Support of Petitioner's Motion for Preliminary Injunction Ordering His Removal from Isolation and Prohibiting His Rendition (Apr. 5, 2005) at 6 (modifications in original). Although they reveal little about the actual conditions of petitioner's detention, respondents assert that he is not, in fact, in solitary confinement.[1]

The absence of any specific firsthand information from petitioner about the conditions of his confinement in support of his motion for an injunction highlights the disturbing fact that, after more than six months of litigation, counsel for petitioner still has had no contact with his client. The government reports that petitioner's counsel thus far has refused to take part in the procedures for client contact set forth in the Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba entered in this case by Judge Joyce Hens Green on December 16, 2004. See Opposition to Petitioner's Motion for Preliminary Injunction Ordering His Removal from Isolation and Prohibiting His Rendition (Apr. 22, 2005) ("Opp.") at 13 & n.14.

Petitioner has chosen to appeal the Court's Order of March 23, 2005, denying petitioner's motion to vacate Judge Green's Protective Order and imposing a stay on proceedings pending the appeal of related cases.[2] The Court does not believe that a decision by counsel to avail himself of the procedures of the Protective Order would compromise petitioner's appeal of

---

[1]     Respondents state that while petitioner "is housed in an individual cell, he does have access to an outdoor exercise yard for approximately one hour each day." Respondents also state that petitioner's conditions of detention afford him the access to medical care and the opportunity to maintain personal hygiene. See Opp. at 11-12.

[2]     The government argues that the stay imposed by the Court bars petitioner's motion for injunction. See Opp. at 7-10. As the government acknowledges, however, the stay by its terms does not "bar the filing and disposition of any motion for emergency relief," see Order (Mar. 23, 2005), which this motion for preliminary injunction clearly is.

this decision, and very likely would enhance counsel's ability to represent his client's interests. Such a tactical decision is, of course, in the hands of counsel, but the Court strongly encourages counsel for petitioner to consider subscribing to the same procedures that have enabled counsel for many similarly-situated *habeas* petitioners to contact their clients.

       Without less ambiguous or more reliable information about the conditions of petitioner's detention – and in light of the fact that the unavailability of such information in this case is occasioned solely by counsel's refusal to participate in the procedures established by the Court for facilitating the exchange of information between clients and their attorneys – petitioner has not demonstrated sufficiently that he will suffer irreparable harm unless an injunction is granted.

       Similar concerns are raised by petitioner's applications to proceed *in forma pauperis*. Attached to petitioner's applications are affidavits from petitioner's wife and counsel asserting that all of petitioner's properties and companies are "subjected, mortgaged, attached, or put under action by the Courts of Law," and that petitioner's bank accounts contain only about $1750. The information provided, however, is not sufficiently detailed to fulfill the statutory and Rule requirements, which demand that an *in forma pauperis* application be accompanied by an affidavit containing, *inter alia*, a statement of all assets petitioner possesses, the names and ages of the persons who rely on petitioner for support, an estimate of petitioner's and his dependents' monthly expenses, and a statement of any monies paid by petitioner to attorneys in connection with his case. See 20 U.S.C. § 1915(a); Fed. R. App. Proc. 24(a)(1); Fed. R. App. Proc. Form 4. In all likelihood, some of the required information already is available to counsel, even if petitioner's consent is required to disclose it; counsel states that he would have access to the rest

3

of the required information if he participated in the Protective Order's procedures for attorney-client communication. See Points and Authorities in Support of Application to Proceed in Forma Pauperis (March 17, 2005) at 5. Accordingly, it is hereby

ORDERED that [50] Petitioner's Motion for Preliminary Injunction Ordering His Removal from Isolation is DENIED without prejudice; it is

FURTHER ORDERED that [48] Petitioner's Application to Proceed *In Forma Pauperis* is DENIED without prejudice; it is

FURTHER ORDERED that [56] Petitioner's Application to Appeal *In Forma Pauperis* is DENIED without prejudice; it is

FURTHER ORDERED that the respondents, their agents, servants, employees, confederates, and any persons acting in concert or participation with them, or having actual or implicit knowledge of this Order by personal service or otherwise, may not remove petitioner from the Guantanamo Bay Naval Base unless this Court and counsel for petitioners receive thirty (30) days' advance notice of such removal; and it is

FURTHER ORDERED that in light of this order, [50] Petitioner's Motion for Preliminary Injunction Prohibiting His Rendition is DENIED as moot.

SO ORDERED.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE: June 16, 2005

4

# EXHIBIT F

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

SHERIF el-MASHAD, *et al.*,          :
                                     :
          Petitioners,               :
                                     :
     v.                              :    Civil Action No. 05-0270 (JR)
                                     :
GEORGE W. BUSH, *et al.*,            :
                                     :
          Respondents.               :

**ORDER**

Petitioners' motion for a preliminary injunction [3] is **denied.** Petitioners' motion for an order to show cause [17] is **granted.** Respondents' motion for a stay [16] is **granted.** Petitioners having submitted themselves to the jurisdiction of this Court, and the Court having asserted in personam jurisdiction, see Rasul v. Bush, 124 S.Ct. 2686 (2004), the stay will apply to all proceedings applicable to the petitioners, including without limitation their release, repatriation, or rendition, and it will remain in effect until further order of the Court. **IT IS SO ORDERED.**

JAMES ROBERTSON
United States District Judge

# EXHIBIT G

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MAHMOAD ABDAH, *et al.*, ) | |
| ) | |
| Petitioners, ) | |
| ) | |
| v. ) | Civil Action No. 04-1254 (HHK) (RMC) |
| ) | |
| GEORGE W. BUSH, *et al.*, ) | |
| ) | |
| Respondents. ) | |

## MEMORANDUM OPINION

   Thirteen Yemeni nationals, designated as "enemy combatants" at the Guantanamo Bay Naval Base ("GTMO") in Cuba, petition for a temporary restraining order ("TRO") to prevent their removal from GTMO and rendition to the custody of another government. They argue that such removal and rendition could have the effect of denying them access to U.S. courts for review of their detainment status and also potentially expose them to interrogation techniques and treatment that would be contrary to the laws of the United States.

   Prior to their application for a TRO, the Petitioners had sought a preliminary injunction that would require the Government to give Petitioners' counsel 30-days notice of any such transfer. That matter is set for hearing before Judge Henry Kennedy on March 24, 2005.[1] In the

---

  [1] The petition for a TRO is before the undersigned as the emergency motions judge for the weekend. It was filed in a manner consistent with secret documents in these cases at approximately 10:30 p.m. on Friday evening, March 11, 2005. Because the motion was filed on a Friday night *ex parte*, and because some of the materials appended to the motion are classified "Secret," the Court has not had the benefit of an opposition to the petition for a TRO or even argument from Petitioners' counsel, there being no available court reporter with clearance. Its decision here is clearly limited by those circumstances. The Court concludes that it can enter this memorandum opinion and order because it bases its analysis largely on the Government's arguments and factual proffer before Judge Kennedy.

meantime, the *New York Times* ran a story on March 11, 2005, describing a proposal by the Pentagon and Secretary of Defense Donald Rumsfeld to transfer more than half of the GTMO detainees to prisons in Saudi Arabia, Afghanistan, and Yemen.[2] Petitioners' counsel also learned from co-counsel at the Center for Constitutional Rights, "citing information from a person, who, for professional reasons, refuses to make her sources public – that the government intends to transfer many detainees very quickly." Petitioners' *Ex Parte* Motion for Temporary Restraining Order to Prevent Respondents From Removing Petitioners From Guantanamo Until Petitioners' Motion for Preliminary Injunction Is Decided ("Pets.' Motion"), Declaration of Marc D. Falkoff ("Falkoff Decl.") ¶ 3. Petitioners seek an *ex parte* TRO "because they are apprehensive that a public filing will provoke respondents to initiate the exact dark-of-night transfers that petitioners seek to prevent." Pets.' Motion at 2.

## BACKGROUND

The Petitioners' underlying case is one of many *habeas corpus* petitions filed in the District Court for the District of Columbia on behalf of GTMO detainees after the Supreme Court in *Rasul v. Bush* held that "the federal courts have jurisdiction to determine the legality of the Executive's potentially indefinite detention of individuals who claim to be wholly innocent of wrongdoing." 124 S. Ct. 2686, 2699 (2004). The Government filed motions to dismiss or for judgment as a matter of law in opposition to many of these *habeas* petitions. Judge Joyce Hens Green, who had been designated to decide common issues of law and fact in eleven of these cases,

---

[2] *See* Pets.' Motion, Exh. C (Douglas Jehl, *Pentagon Seeks to Transfer More Detainees from Base in Cuba*, The New York Times (March 11, 2003)).

granted the motion in part and denied it in part.[3] In a separate case, Judge Richard Leon granted the

motion in its entirety.[4] The cases before Judges Green and Leon have been fully briefed in the D.C.

Circuit Court of Appeals and are under submission.

Fearful that the Government would transfer the detainees to other countries to avoid

further adverse court rulings, the Petitioners have sought a preliminary injunction from Judge

Kennedy to require 30-days prior notice of any such transfer. The Government filed its opposition

to that petition on March 8, 2005 and described in detail the nature of its process for considering

transfer of GTMO detainees. While that process involves high-level contacts between the U.S.

Department of State and a foreign government, as well as consideration of a detainee's status by the

U.S. Department of Defense, it does not contemplate any coordination or notice to the courts, where

constitutional issues are being litigated, or notice to the detainees' counsel.

## LEGAL STANDARDS

A TRO may be granted "without written or oral notice to the adverse party or that

party's attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified

complaint that immediate and irreparable injury, loss, or damage will result to the applicant before

the adverse party or that party's attorney can be heard in opposition . . . ." FED. R. CIV. P. 65(b). The

purpose of a TRO is to preserve the status quo and prevent irreparable harm until a hearing can be

held. *See Granny Goose Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 439 (1974).

In considering a request for a TRO, the court must examine whether: "(1) there is a

---

[3] *In re Guantanamo Detainee Cases*, 2005 WL 195356 (D.D.C. Jan. 31, 2005), *appeal docketed*, No. 05-8003 (D.C. Cir. ___ ).

[4] *Khalid v. Bush*, 2005 WL 100924 (D.D.C. Jan. 19, 2005), *appeal docketed*, No. 05-5063 (D.C. Cir. ___ ).

substantial likelihood plaintiff will succeed on the merits; (2) plaintiff will be irreparably injured if an injunction is not granted; (3) an injunction will substantially injure the other party; and (4) the public interest will be furthered by an injunction." *Davenport v. Int'l Bhd. of Teamsters, AFL-CIO*, 166 F.3d 356, 360 (D.C. Cir. 1999). These factors interrelate on a sliding scale and must be balanced against each other. *Id.* at 361. A strong showing on one factor can outbalance a weaker showing on another.

Where the balance of hardships tips decidedly toward the movant, it will "'ordinarily be enough that the [movant] has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberative investigation.'" *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977) (citation omitted). "An order maintaining the status quo is appropriate when a serious legal question is presented, when little if any harm will befall other interested persons or the public and when denial of the order would inflict irreparable injury on the movant. There is substantial equity, and need for judicial protection, whether or not movant has shown a mathematical probability of success." *Id.* at 844.

## ANALYSIS

The analysis here needs to define the rights at issue. Petitioners have a pending motion for a preliminary injunction ("PI") to obtain prior notice before they may be transferred to a foreign country for continued detention and, perhaps, interrogation by techniques that may be contrary to the laws of this country. Their motion for a PI, in turn, is designed to protect the Petitioners' rights to have the lawfulness of their current detention at GTMO ruled on by the Court of Appeals.

As defined by the Supreme Court, "'the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest.'" *Rasul*, 124 S. Ct. at 2692 (quoting *INS v. St. Cyr*, 533 U.S. 289, 301 (2001)). "Executive imprisonment has been considered oppressive and lawless since John, at Runnymede, pledged that no free man should be imprisoned, dispossessed, outlawed, or exiled save by the judgment of his peers or by the law of the land." *Id.* (quoting *Shaughnessy v. United States ex. rel. Mezei*, 345 U.S. 206, 218-219 (1953) (Jackson, J., dissenting)). The "law of the land" is interpreted and applied in this country by its court systems.

Detainees at GTMO may be transferred to the control of another government, generally to their country of citizenship, for release. Respondents' Memorandum in Opposition to Petitioners' Motion for Order Requiring Advance Notice of Any Repatriations or Transfers From Guantanamo ("U.S. Opp.") at 3; Declaration of Deputy Assistant Secretary of Defense for Detainee Affairs Matthew C. Waxman ("Waxman Decl.") ¶ 3; Declaration of Ambassador Pierre-Richard Prosper ("Prosper Decl.") ¶ 3. "The United States also transfers Guantanamo detainees, under appropriate conditions, to the control of other governments for investigation and possible prosecution and continued detention when those governments are willing to accept responsibility for ensuring, consistent with their laws, that the detainees will not pose a threat to the United States and its allies." U.S. Opp. at 3; *see also* Pets.' Motion, Exh. F.

The Petitioners have adequately shown that they could face continued detention at the request of the United States, or as a condition of their release from GTMO set by the United States, in any country to which they might be transferred even if, after the transfer, that foreign nation assumed full responsibility and control over their terms of incarceration and the United States

fully relinquished such responsibility and control.

A.     Likelihood of Success on the Merits

*Habeas corpus* challenges the detention of the petitioner.  The Government wants

at least some of the GTMO detainees to remain in detention, even if transferred to the control of

foreign nation.  Once transferred, however, their *habeas* petitions would become moot because

the courts in the United States would no longer have control over their warden.

The Government argues to Judge Kennedy, in its opposition to the Petitioners'

request for a preliminary injunction, that "[t]here is no legal basis for judicial intervention in the

processes by which enemy combatant detainees are repatriated or transferred, and any such

interference would illegitimately encroach on the foreign relations and national security

prerogatives of the Executive Branch."  U.S. Opp. at 1.  Obviously, the Petitioners' request for

30-days advance notice of any transfer is not at issue here and will not be decided.  For purposes

of the TRO, however, the Court finds that it would not be necessary in any way to intrude into

foreign relations or negotiations over repatriation or transfer.  The Court need only assess

whether removing the detainees from the jurisdiction of the Court – while insisting on their

continued detention – is subject to a temporary injunction so that the legality of that detention *ab*

*initio* can be determined and the trial judge can decide whether prior notice is appropriate.  These

issues are "'so serious, substantial, difficult and doubtful'" as to warrant maintaining the status

quo "whether or not movant has shown a mathematical probability of success." *Washington*

*Metro. Area Transit Comm'n*, 559 F.2d at 844 (citation omitted).

There is no doubt that the district courts have jurisdiction over the Petitioners'

*habeas corpus* petitions. *Rasul*, 124 S. Ct. at 2698.  There is also no doubt that "the All Writs

Act, 28 U.S.C. § 1651(a), empowers a district court to issue injunctions to protect its

jurisdiction . . . ." *SEC v. Vision Communications, Inc.*, 74 F.3d 287, 291 (D.C. Cir. 1996). The

Government resists this conclusion by arguing that Judge Green stayed these cases "for all

purposes" and that there is no jurisdiction remaining in the district court. The Court disagrees.

      The appeal from Judge Green's ruling is interlocutory; the rest of the case remains

with Judge Kennedy and with the undersigned as the emergency motions judge. Because Judge

Green's ruling was so fundamental to the very rights of these litigants in the federal courts – and

because Judge Leon's ruling disagreed – Judge Green ordered an administrative stay to save

time, money and judicial resources. Such a stay could not be read to also deprive the Petitioners

of their rights to seek emergency assistance when faced with continued detention at the request of

the United States but no venue in which to challenge its legality.

      The Court expresses no opinion on the likelihood that Petitioners will succeed in

their request for a 30-day notice prior to any transfer to a foreign country. Instead, it rules that

the Petitioners have at least a fifty-fifty chance of prevailing on their constitutional claims before

the Court of Appeals and that they raise serious arguments that require more deliberative

consideration concerning whether removing them from the Court's jurisdiction, while insisting

on continued detention, is within the province of the executive.

      B.   <u>Irreparable Harm</u>

      Were the Petitioners to be transferred to the control of a foreign country, they

would effectively lose their rights to pursue their *habeas* claims in this country. The Court finds

that their injury would be continued detention outside the jurisdiction of U.S. courts – courts that

are actively reviewing the constitutionality of that very detention. While the Supreme Court has

granted them a right of access to our court system, such a transfer would terminate that right, insofar as it sounds in *habeas corpus*, because U.S. courts would no longer have control over their warden. Presumably, the Petitioners would suffer no harm if the Government were to transfer them to Yemen for release; that is the goal of their *habeas* petitions. A transfer with continued indeterminate detention with no right of review or further court access poses a very different set of parameters. With or without the allegation of improper forms of interrogation in a foreign country, the Court concludes that a continuation of their detention without redress to assess its legality could constitute irreparable harm to the Petitioners.

Nonetheless, the Court pauses over whether the Petitioners have shown the immediacy of potential harm that justifies a TRO before the Government or its attorney could be heard. FED. R. CIV. P. 65(b) (TRO may be granted without notice only if "it clearly appears from specific facts . . . that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition."). The only evidence of immediacy here is third- or fourth-hand hearsay: co-counsel at the Center for Constitutional Rights told Petitioners' counsel that s/he was informed by an unnamed person that another unnamed source confided that the Government intends to transfer many detainees – who may or may not include any of the instant Petitioners – "very quickly." The reliability of such information cannot be ascertained. Yet the Government has already denied a request from counsel for the Petitioners that it informally agree to give advance notice of any transfer and it clearly regards such notice as an intrusion into the executive sphere of foreign relations. Consequently, the Petitioners state that they filed *ex parte* to avoid precipitating any hasty action by the Government to avoid addressing such transfers-and-continued-detention in a U.S. court.

-8-

What is evident from the record is that the Pentagon and the State Department are working together to arrange for some numbers of unspecified GTMO detainees to be transferred to foreign nations and detained for uncertain periods. The Government refuses to give any advance notice of such transfers. Approximately 200 detainees have already been transferred, sixty-five of whom were sent abroad on the condition that they continue to be detained. Prosper Decl. ¶ 2. "Of those 65 detainees who have been transferred to the control of host governments, 29 were transferred to Pakistan, 9 to the United Kingdom, 7 to Russia, 5 to Morocco, 6 to France, 4 to Saudi Arabia, 1 to Denmark, 1 to Spain, 1 to Sweden, 1 to Kuwait, and 1 to Australia." *Id.* That this process continues is acknowledged by the United States. "Among the assurances sought in every transfer case in which continued detention by the government concerned is foreseen is the assurance of humane treatment . . . ." *Id.* ¶ 6. Under these circumstances, the only way that anyone could know that a transfer is about to happen, *i.e.,* be "immediate," is if one is within the chain of command within the federal departments that consult on such matters or if there were information revealed *sotto voce* to a reporter. Based on the totality of the circumstances, the Court finds that the Petitioners face a risk of irreparable harm that is sufficiently immediate to warrant temporary relief.

C.     Injury to the Government

The Court can see no injury to the Government from granting a temporary injunction here. At most, this injunction will be alive for ten days unless both parties agree to its continuation or Judge Kennedy extends it another ten days. Nothing about this injunction will serve to prevent the Government's diplomatic and other efforts to arrange transfers of Guantanamo Bay detainees but it will ensure that a judicial officer reviews the Petitioners' rights

to prior notice and/or retention in this jurisdiction before the Government actually carries out any such transfer.

     D.    <u>Injury to the Public Interest</u>

The Court can see no injury to the public interest from granting a temporary injunction here.

**CONCLUSION**

For the reasons stated, the *Ex Parte* Motion for a Temporary Restraining Order will be GRANTED. The Temporary Restraining Order accompanies this memorandum opinion.


DATE: March 12, 2005.

TIME: 3:40 p.m.

                      /s/ _____
                      ROSEMARY M. COLLYER
                      United States District Judge

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MAHMOAD ABDAH, *et al.*, | ) |
| | ) |
| Petitioners, | ) |
| | ) |
| v. | ) Civil Action No. 04-1254 (HHK) (RMC) |
| | ) |
| GEORGE W. BUSH, *et al.*, | ) |
| | ) |
| Respondents. | ) |

## AMENDED TEMPORARY RESTRAINING ORDER

For the reasons stated in the Memorandum Opinion issued this date, it is hereby ordered that Defendants, their agents, servants, employees, confederates, and any persons acting in concert or participation with them, or having knowledge of this Order by personal service or otherwise, be, and are, hereby immediately and temporarily restrained from removing Petitioners from Guantanamo Bay Naval Base until this matter can be determined at a hearing for a preliminary injunction or for ten days, whichever is less. This Amended Temporary Restraining Order replaces the Initial Temporary Restraining Order issued on March 12, 2005 at 3:40 p.m.

**SO ORDERED.**

DATE: March 12, 2005.

TIME: 3:40 p.m. (Initial TRO)
        4:20 p.m. (Amended TRO)

/s/_____
ROSEMARY M. COLLYER
United States District Judge

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been served by Federal Express to the following person:

**Robert J. Katerberg**
ATTORNEY
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW
Washington, D.C. 20530

On this the 2nd day of December, 2005.

Joel M. Elfman