IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MOHAMMED BIN JAIED ALADI <br> AL MOHAMMED AL SUBAIE, *et al.*, <br> *Petitioners* <br> <br> v. <br> <br> GEORGE W. BUSH, *et al.*, <br> *Respondents.* | Civil Action No. 2216-05 (RCL) <br> <br> [ORAL ARGUMENT REQUESTED] |

PETITIONERS' MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO RESPONDENTS' MOTION FOR A STAY AND IN
SUPPORT OF PETITIONERS'
<u>CROSS-MOTION FOR FACTUAL RETURNS</u>

Petitioners Mohammed Bin Jaied Aladi Al Mohammed Al Subaie, Bijad Defalla Oteibi, and Alghamdi Abdulrahman Othman A ("Petitioners") respectfully submit this memorandum (i) in opposition to Respondents' motion for a stay pending the Court of Appeals for the District of Columbia's determination of the conflicting decisions in *In re Guantanamo Detainee Cases*, 355 F. Supp. 2d 443 (D.D.C. 2005) and *Khalid v. Bush*, 355 F. Supp. 2d 311 (D.D.C. 2005) and (ii) in support of Petitioners' cross-motion for production of their factual returns within forty-five (45) days.[1]

---

[1] Pursuant to Local Civil Rule 7(m), the undersigned counsel conferred with Respondents' counsel regarding production of Petitioners' factual returns and Respondents' counsel indicated that they would not consent to produce them.

The issue before the Court is the scope of the stay to be entered -- not whether Petitioners' actions should be stayed. Given Judge Green's initial stay of the habeas cases under her supervision and the sequel of stays subsequently entered in other cases, Petitioners do not oppose the entry of an appropriate stay order similar to those entered by most of the judges of this Court. They do, however, strenuously oppose the overly broad stay order proposed by Respondents. For the reasons described herein, the stay order should be limited in the manner described below in order to prevent real prejudice to Petitioners, and Respondents should be required to provide factual returns within forty-five (45) days.

Respondents' position that "there is no reason why counsel need access to factual returns at this time" (Resp. Mot. at 14) defies logic and common sense and has been rejected by at least eight judges of this Court, as have Respondents' claims of undue burden (Resp. Mot. at 15). *See Al-Mohammed v. Bush*, 05-CV-0247 (HHK) (D.D.C. Apr. 30, 2005) (dkt no. 18) (Ex. A); *Hatim v. Bush*, 05-CV-1429 (RMU) (D.D.C. Aug. 22, 2005) (dkt no. 16) (Ex. B); *Kurnaz v. Bush*, 04-CV-1135 (ESH), 2005 WL 839542 (D.D.C. Apr. 12, 2005) (Ex. C); *Al-Adahi v. Bush*, 05-CV-0280 (GK) (D.D.C. Apr. 29, 2005) (dkt no. 35) (Ex. D); *Al-Anazi v. Bush*, 05-CV-00345 (JDB) (D.D.C. Apr. 21, 2005) (dkt no. 22) (Ex. E); *Al-Shamri v. Bush*, 05-CV-0551 (RWR) (D.D.C. May 10, 2005) (dkt no. 10) (Ex. F). *See also* Judge Green's decision in *In re Guantanamo Detainee Cases*, 355 F. Supp. 2d at 451, and Judge Robertson's comments *infra* at 4. As these courts recognize, Petitioners need the factual returns in order to prepare an effective defense.

Not surprisingly, many of the "stay" cases *relied on by Respondents* (Resp. Mot. at 9-10 n.6) are cases where factual returns *were, in fact, ordered produced*. The following is a brief sampling of what some of the judges have ruled in cases *cited by Respondents*:

- "Respondents' position with respect to the release of factual returns must be rejected. With respect to the

> necessity for the returns, petitioners' counsel must have access to them in order to develop a meaningful understanding of the 'basic factual allegations that underlie Mr. Al-Mohammed's detention'. . . and prepare for consultation with their clients. As for Respondents' contention that the submission of the factual returns 'would impose significant burdens and potential risks on the government,' the entry of the protective order should allay Respondents' fears of inadvertent disclosure of classified or otherwise protected information. Meanwhile, Respondents' assertion that they 'face an immense logistical burden to process and file the returns'. . . is entirely unconvincing in light of the government's demonstrated capabilities in managing the numerous factual returns that it has already submitted for other petitioner-detainees." (*Al-Mohammed v. Bush*, 05-CV-0247 (HHK) (D.D.C. Apr. 30, 2005) (dkt no. 18) (Ex. A), slip op. at 2-3)

- To avoid being prejudiced by a stay, habeas counsel must "begin preparing their defense well in advance of any ruling by the Court of Appeals." (*Al-Adahi v. Bush*, 05-CV-0280 (GK) (D.D.C. Apr. 29, 2005) (dkt no. 35) (Ex. D), slip op. at 2 n.1)

- "[T]he factual returns appear necessary for petitioners' counsel effectively to represent petitioners. Indeed, even initial conversations by counsel with their clients may be very difficult without access to that basic factual information." (*Al-Anazi v. Bush*, 05-CV-0345 (JDB) (D.D.C. Apr. 21, 2005) (dkt no. 21) (Ex. E), slip op. at 20)

The broad stay proposed by Respondents would emasculate the Supreme Court's holding in *Rasul v. Bush*, 542 U.S. 466 (2004), recognizing the detainees' habeas rights, and the District Court's subsequent holding in *Al Odah v. United States*, 346 F. Supp. 2d 1 (D.D.C. 2004) that the detainees have a right to be represented by counsel that cannot be impermissibly burdened. That counsel have the ability to visit detainees in Guantanamo is not an excuse for refusing to provide factual returns (Resp. Mot. at 14). On the contrary, it is one of several powerful reasons why timely provision of such returns is absolutely essential.

## ARGUMENT

### I. THERE ARE COMPELLING REASONS WHY PETITIONERS' FACTUAL RETURNS SHOULD BE PROMPTLY PRODUCED.

Factual investigation of this case by Petitioners' counsel needs to begin forthwith. To date, government counsel has not provided any information about Petitioners, who presumably have been detained for years. Timely production of factual returns is essential for a wide range of reasons -- *e.g.*, to determine whether Petitioners are even designated as "enemy combatants," to facilitate the formation of attorney-client relationships, to assist in preparing for initial meetings, to ensure that Petitioners are represented effectively, and to prevent the loss of evidence.

Judge Robertson was flabbergasted to learn last year that the petitioners in *Qassim v. Bush*, 05-CV-0497 (JR) had been found by the CSRT to be noncombatants months earlier *but that neither petitioners' counsel nor the Court had been so advised*, despite petitioners' request for factual returns. *Id.*, 8/1/05 hrg. tr. (Ex. G) at 2-3, 5. That startling revelation led Judge Robertson to conclude as follows:

> I'll tell you one thing, Counsel. You've talked me early on into not requiring returns to be filed in the cases. But I'm going to go back to all of my habeas cases this afternoon and change those orders. Because if you're telling me that it's only an order to file a return that will allow you to tell opposing counsel that their clients are no longer enemy combatants, that's a little hard for me to understand.

*Id.* at 21.

Factual returns are necessary also to formation of the attorney-client relationship. The government's actions in these cases present unique and substantial barriers to the normal formation of an attorney-client relationship. Respondents have taken custody of Petitioners and transported them to a distant land, then kept them in near complete isolation from the outside

world for a period of years. During their years at Guantanamo, Petitioners likely have been subjected to harsh interrogation tactics and various forms of severe treatment that have inflicted substantial psychological stress. They may have been interrogated by government officials posing as habeas counsel (or heard of this tactic being used on other detainees). Petitioners now find themselves as participants in a legal system that is completely foreign to them, and are faced with the decision of whether to entrust their claims to the care of lawyers whom they have never met before, who likely do not speak their language or share their cultural background or religious beliefs, and who may from Petitioners' perspective represent the very establishment that has subjected them to extreme treatment. All of these considerations seriously undermine Petitioners' ability to make an informed and rational decision concerning whether they should authorize continued representation by habeas counsel. Denying habeas counsel factual returns makes an already difficult situation even worse.

Without factual returns, counsel is placed in the untenable position of walking into the initial client meeting with absolutely zero information concerning the government's allegations. Counsel's efforts to gain Petitioners' trust and to develop their cases will necessarily be hobbled, as other judges have recognized. *See, e.g., Tumani v. Bush*, 05-CV-0526 (RMU) (D.D.C. Apr. 19, 2005) (dkt no. 6) (Ex. H), slip op. at 2 ("petitioners' counsel should be able to review the returns now so that they can develop their case and prepare for any consultation with their clients"). The alternative that might be appropriate in other circumstances -- *i.e.*, questioning the client to obtain background information that could give some hint of the basis (if any) for the government's case -- is unacceptable here because the client would likely perceive this as an interrogation having much in common with the extensive questioning he has almost certainly been subjected to from government agents during his years of confinement.

Habeas counsel cannot effectively represent their clients simply by visiting Petitioners at Guantanamo without the information contained in their factual returns. Counsel need to know *Respondents*' statement of the accusations against Petitioners, not Petitioners' recollection or understanding of those accusations. Moreover, counsel need to know the evidence on which Respondents rest their accusations, which Respondents have not shared with Petitioners. Counsel's ability to effectively prepare for meetings with their clients would be severely hampered if they could not receive this information in advance of those meetings.

Staying this case in the manner suggested by Respondents would thwart the urgent need for habeas counsel to begin gathering evidence and otherwise preparing for the eventuality of a hearing. Ongoing preparation is necessary because memories fade; witnesses move, die, or change jobs; and documentary evidence disappears. As time passes, Petitioners face increasing prejudice by their counsel's inability to interview them, and others, in a focused and informed manner. Staying legal proceedings does not mean that investigative measures should be curtailed in the interim. Timely production of factual returns is critical "to ensure that the proceedings can continue in an orderly fashion in the event that the detainees prevail on appeal." *Kurnaz v. Bush*, 04-CV-1135 (ESH), 2005 WL 83954 at *1 (D.D.C. Apr. 12, 2005) (Ex. C).

## II. RESPONDENTS' ARGUMENTS AGAINST PROVIDING FACTUAL RETURNS ARE WEAK AND MAKESHIFT.

Respondents pose a series of reasons why factual returns should not be provided. None have any serious merit, and all pale in comparison to habeas counsel's right, and need, to know the nature of the allegations against their clients.

First, Respondents imply that the provision of factual returns would involve the unnecessary expenditure of judicial resources (Resp. Mot. at 4, 9). But the provision of factual returns does not involve the Court at all. What does involve the Court is the unnecessary filing

of broad motions to stay seeking relief that is at variance with the vast majority of decisions by judges of this Court.

Respondents also complain that providing Petitioners' factual returns would confront them with "an immense logistical burden" (Resp. Mot. at 15). But Respondents have already provided factual returns in scores of other Guantanamo habeas cases, and they continue to do so in others. Most of the judges of this Court have rejected Respondents' claim of burden. *See discussion supra.* Furthermore, any "burden" to Respondents cannot outweigh Petitioners' interest in ensuring the investigation and preparation of their cases before the trail -- cool as it might be now -- becomes completely cold, and in being able to proceed without delay if their cases are allowed to continue.

Respondents' asserted "burden," moreover, is vastly overblown. The factual return is simply the record of proceedings before the CSRT (Resp. Mot. at 14 n.9). That record already exists. Classification decisions regarding the information in the record of those proceedings were made *before* the proceedings began, and the entirety of the proceedings underwent legal review upon their completion. *See, e.g.*, Mem. From Bree A. Ermintrout to Director, CSRT, Jan. 18, 2005, in Factual Return for Petitioner Abdulsalam Ali Abdulrahman Al-Hela, *Al-Hela v. Bush*, 05-CV-01048 (RMU) (D.D.C. June 15, 2005) (Ex. I). Pursuant to Respondents' own policies, the factual returns were required to be compiled within three days of the decision of the CSRT's regarding Petitioners, and all such decisions were to be completed by March 2005. Memorandum re: Order Establishing Combatant Status Review Tribunal (July 7, 2004), *available at http://www.defenselink.mil/news/Jul2004/d20040707review.pdf; see also* Update to Annex One of the Second Periodic Report of the United States of America to the Committee Against Torture (October 21, 2005) ("As of March 29, 2005, the CSRT Director had taken final

action in all 558 cases."), *available at http://www.state.gov/g/drl/rls/55712.htm*. There is very little, if any, need for Respondents to actually draft any extensive document.

Moreover, it is ludicrous for the government to argue that it is unduly burdensome to produce factual returns *to Petitioners' counsel,* when the government has produced redacted copies of essentially the same documents *to the Associated Press. See Associated Press v. United States Department of Defense*, 05 Civ. 3941 (JSR) (S.D.N.Y. Jan. 4, 2006) (Ex. J) (in response to suit by the Associated Press, government produced redacted copies of [CSRT] transcripts and related documents). Indeed, unclassified CSRT files for about 60 detainees -- not Petitioners -- can be viewed at http://wid.ap.org/documents/detainees/list.html. Even a cursory review of these files shows that Respondents already have well-organized factual files that can be readily produced. Obviously, *unredacted* factual returns can be produced even more quickly to Petitioners' counsel, with security clearance.

Respondents claim further that the returns would be useless to Petitioners' counsel because counsel could not share with Petitioners the classified information in their returns (Resp. Mot. at 14). But not all the information in the returns is classified. The allegations against Petitioners, which are set forth in the returns, are not classified, and, as noted, until Petitioners' counsel have seen the returns, they will not even know what their clients are accused of having done. The returns also include: (1) an unclassified discussion of the classified information before the CSRT; (2) an unclassified summary of the transcripts of the CSRT hearings, including any statement or testimony by Petitioners or their "personal representatives"; and (3) other unclassified information that counsel have found highly useful in their representation of other prisoners. And, although counsel may not disclose classified information in the returns to Petitioners, knowing that information enables counsel to focus their investigation and preparation

of their cases and to seek from them and others facts pertinent to their "enemy combatant" designation.

Finally, Respondents speculate that providing the returns in this case would increase the risk of inadvertent disclosure – or other compromise – of classified information (Resp. Mot. at 15). This speculation lacks basis. Only counsel who have been granted security clearances and submitted themselves to a stringent Protective Order may see the classified information in the returns. As noted in *Al Odah v. United States*, 346 F. Supp. 2d 1, 14 (D.D.C. 2004): "The Government's decision to grant an individual attorney a security clearance amounts to a determination that the attorney can be trusted with information at that level of clearance."

## III. ANY STAY SHOULD BE CONDITIONED, *INTER ALIA*, UPON RESPONDENTS' PROVISION OF PETITIONERS' FACTUAL RETURNS WITHIN 45 DAYS.

A party seeking a stay of judicial proceedings

> must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else. Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both.

*Dellinger v. Mitchell*, 442 F.2d 782, 786 (D.C. Cir. 1971) (quoting *Landis v. North American Co.*, 299 U.S. 248, 255 (1946)). In considering a request for stay, the Court must balance the respective interests of the parties and the relative harm the stay would inflict. "Any protracted halting or limitation of plaintiffs' right to maintain their case would require not only a showing of 'need' in terms of protecting the other litigation involved but would also require a balanced finding that such need overrides the injury to the parties being stayed." *Dellinger*, 442 F.2d at 787.

A court may, in appropriate situations, specify protective conditions in balancing the hardship necessarily imposed on the party whose suit or execution of judgment has been stayed pending appeal. *Cooks v. Fowler*, 459 F.2d 1269, 1272-73 & n.27 (D.C. Cir. 1971) (affirming condition of stay requiring tenant appealing judgment to deposit funds in court registry pending appeal).[2] Where the condition imposed on the proponent of the stay is "'neither heavy nor unexpected,'" imposing a protective condition is well within a court's discretion. *Cooks*, 459 F.2d at 1273 (quoting *Bell v. Tsintolas Realty Co.*, 430 F.2d 474, 482 (D.C. Cir. 1970) ("[w]e have little doubt that [a court] may fashion an equitably remedy to avoid placing one party at a severe disadvantage during the period of litigation")).

The unique nature of the habeas corpus remedy weighs heavily in favor of conditioning the stay on the government's production of factual returns within 45 days. The norm for federal habeas litigation is rapid adjudication of the issues: "A court, justice or judge entertaining an application for a writ of habeas corpus shall *forthwith* award the writ or issue an order directing the respondent to show cause why the writ should not be granted. . ." 28 U.S.C. §2243 (emphasis supplied). Writs of habeas corpus are intended to afford a "swift and imperative remedy in all cases of illegal restraint or confinement.'" *Fay v. Noia*, 372 U.S. 391, 400 (1963) (quoting *Secretary of State for Home Affairs v. O'Brien*, 1923 A.C. 603, 609 (H.L.)); *see Carafas v. LaVallee*, 391 U.S. 234, 238 (1968) (purpose of habeas corpus statute is to provide an effective and speedy instrument by which judicial inquiry may be had into legality of detention).

---

[2] *See also City of Portland v. Federal Maritime Comm'n*, 433 F.2d 502, 504 (D.C. Cir. 1970) (directing the proponent of a stay in a case challenging shippers' exclusion of one city's port from service to "be prepared to state reasons why this court should not impose a conditional stay requiring the rotation of service among the ports involved pending final review and determination"); *Scott v. Scott*, 382 F.2d 461, 462 (D.C. Cir. 1967) (discussing a stay of execution of judgment conditioned upon support payments).

Respondents have argued that producing factual returns on a rolling schedule over the next 10 to 12 weeks would be "appropriate" (Resp. Mot. at 16). While this is a significant admission, it still gives undue weight to "logistical" issues which Respondents have had no trouble overcoming when ordered to more promptly produce factual returns. As importantly, it affords no weight to the compelling need for Petitioners' counsel to receive this information so that they can begin to efficiently develop their clients' cases while these matters are stayed. Among other things, Petitioners' counsel will need this information before meeting with their clients in Guantanamo (likely in early February) after receiving security clearances.

In *Landis*, the Supreme Court held that a stay may not be "immoderate in extent" or "oppressive in its consequences." 299 U.S. at 256. Given the conditions of incarceration at Guantanamo and the lengthy, potentially indefinite, duration of detention faced by Petitioners, it is difficult to conceive how a stay which effectively cripples counsel from developing Petitioners' cases during the pendency of the stay, by depriving counsel of Petitioners' factual returns, is not immoderate in extent and oppressive in its consequences.

Any stay order should also (i) include entry of the Protective Order so that the parties may avail themselves of the procedures set forth therein, (ii) allow for the filing and disposition of motions for emergency relief (as this Court provided in its stay order in *Attash v. Bush*, 05-1592 (RCL) (D.D.C. Sept 1, 2005) (dkt no. 12) (Ex. K)), and (iii) not exclude ancillary motions that have been generally determined to be outside the scope of the stay (e.g., motions for notice of transfer and for the preservation of evidence).[3]

---

[3] Respondents have motions pending addressing these two issues.

-11-

## CONCLUSION

For the reasons discussed above, Petitioners respectfully request that the Court enter a conditional stay order in the form attached hereto as Exhibit L. Petitioners further request oral argument.

Dated: New York, New York
       January 6, 2006

                                          Respectfully submitted,
                                          Counsel for Petitioners

                                          _____
                                          Charles H.R. Peters
                                          Beth D. Jacob
                                          Antony S. Burt
                                          David H. Anderson
                                          Michael W. Drumke
                                          Donald A. Klein
                                          Brian J. Neff
                                          Seth D. Lamden
                                          Ismail Alsheik

                                          SCHIFF HARDIN LLP
                                          623 Fifth Avenue
                                          New York, New York 10022
                                          Tel: (212) 753-5000
                                          Fax: (212) 753-5044
                                               and
                                          6600 Sears Tower
                                          Chicago, Illinois 60606
                                          Tel: (312) 258-5500
                                          Fax: (312) 258-5600

                                          *Of Counsel*
                                          Barbara J. Olshansky (NY0057)
                                          Director Counsel
                                          Tina Monshipour Foster (TF5556)
                                          Gitanjali S. Gutierrez (GG1234)
                                          CENTER FOR CONSTITUTIONAL
                                               RIGHTS
                                          666 Broadway, 7th Floor
                                          New York, New York 10012
                                          Tel: (212) 614-6439
                                          Fax: (212) 614-6499

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been served by Certified Mail, Return Receipt Requested, to the following persons:

**Robert J. Katerberg**
ATTORNEY
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW
Washington, D.C.  20530

On this the 6th day of January, 2006.

_____
Louis P. Bonilla

NY\ 5049820.2

CH2\ 1336414.1