### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MOHAMMED BIN JAIED BIN ALADI AL MOHAMMED AL SUBAIE,** Detainee, Guantanamo Bay Naval Station, Guantanamo Bay, Cuba;  **JAIED BIN HADI AL MOHAMMED AL SUBAIE,** *as next friend of* Mohammed Bin Jaied Bin Aladi Al Mohammed Al Subaie; **BIJAD DEFALLA OTEIBI,** Detainee, Guantánamo Bay Naval Station, Guantánamo Bay, Cuba; **SULTAN DEFALLA OTEIBI** *as next friend of* Bijad Defalla Oteibi; **ALGHAMDI ABDULRAHMAN OTHMAN A,** Detainee, Guantanamo Bay Naval Station, Guantanamo Bay, Cuba; **ALGHAMDI AHMED OTHMAN A,** *as next friend of* Alghamdi Abdulrahman Othman A, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| *Petitioners,* | ) **Civil Action No. 2216-05** ) **(RCL)** |
| v. | ) ) |
| **GEORGE W. BUSH,** as President of the United States, The White House, 1600 Pennsylvania Ave., N.W., Washington, D.C. 20500;  **DONALD RUMSFELD,** as Secretary, United States, Department of Defense, 1000 Defense Pentagon, Washington, D.C. 20301-1000; **ARMY BRIG. GEN. JAY HOOD,** as Commander, Joint Task Force – GTMO, JTF-GTMO, APO AE 09360; and **ARMY COL. MIKE BUMGARNER,** as Commander, Joint Detention Operations Group - JTF-GTMO, JTF-GTMO, APO AE 09360, | ) ) ) **[ORAL ARGUMENT** ) **REQUESTED]** ) ) ) ) ) ) ) ) |
| *Respondents/Defendants.* | ) ) |

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITIONERS' MOTION FOR ORDER REQUIRING RESPONDENTS TO PRESERVE AND MAINTAIN ALL MATERIALS, DOCUMENTS, AND <u>INFORMATION REGARDING OR RELATED TO PETITIONERS</u>

Petitioners Mohammed Bin Jaied Bin Aladi Al Mohammed Al Subaie, Bijad Defalla

Oteibi, and Alghamdi Adbulrahman Othman A (hereinafter referred to collectively as

"Petitioners"), together with their respective Next Friends as co-Petitioners, by and through

undersigned counsel, submit the following Memorandum in support of their motion for an

Order requiring Respondents to preserve and maintain all materials, documents, and

information regarding or related to Petitioners, including, but not limited to, documents

regarding or related to:

    (i)     Petitioners apprehension;
    (ii)    Petitioners' detention;
    (iii)   Petitioners' statements and statements of others related to Petitioners;
    (iv)   Interrogations of Petitioners;
    (v)    Petitioners' medical and psychological health and any treatment received; and
    (vi)   Petitioners' proceedings before the Combatant Status Review Tribunal or Annual Review Board and preparation for such proceedings.

Pursuant to Local Civil Rule 7(m), Petitioners' counsel conferred with counsel for

Respondents regarding the relief sought in this motion, and Respondents' counsel indicated

that they would not consent to the relief requested.

## PRELIMINARY STATEMENT

Petitioners have been detained at the United States Naval Base at Guantanamo Bay

("Guantanamo") for nearly four years. Petitioners' habeas petition raises serious challenges to

the legality of their detention and treatment by Respondents. However, all evidence regarding

Petitioners' habeas claims is in Respondents' custody and control.

Because Respondents may argue that the Federal Rules of Civil Procedures regarding

discovery and the attendant obligations to preserve evidence may not apply in habeas actions

absent action by the Court, and in light of reports that spoliation of material related to detainee

treatment may have occurred, an order requiring the preservation of relevant documents is

critical to the fair adjudication of this case. The requested relief does not unduly burden

Respondents, as it imposes no greater burden on Respondents than the typical obligations of a

litigant in a civil action.

Petitioners respectfully submit that entry of the proposed order is not inconsistent with a stay since the proposed order merely preserves evidence and maintains the status quo. If a stay is ordered, some time will pass before any discovery will occur. A preservation order will maintain the status quo until discovery is appropriate in this action.

## ARGUMENT

A party seeking a preservation order must demonstrate "that it is necessary and not unduly burdensome." *Pueblo of Laguna v. United States*, 60 Fed. Cl. 133, 138 (2004). Petitioners do not have to satisfy the standard for entering a preliminary injunction. "[A] document preservation order is no more an injunction than an order requiring a party to identify witnesses or to produce documents in discovery." *Laguna*, 60 Fed. Cl. at 138 n.8 (citing *Mercer v. Magnant*, 40 F. 3d 893, 896 (7th Cir. 1994)). *Accord Al-Marri v. Bush*, 2004–CV-2035, 2005 U.S. Dist. LEXIS (D.D.C. Mar. 7, 2005) (GK); *Abdah v. Bush*, 2004-CV-2035, 2005 U.S. Dist. LEXIS 17195 (D.D.C. Mar. 7, 2005) (HHK). *See also Ditlow v. Shultz*, 517 F.2d 166, 173-74 n.31 (D.C. Cir. 1975) (preservation order issued when moving party presented "sufficiently substantial" challenge on the merits, non-moving party agreed to maintain documents at issue, and preservation of documents presented only a "limited housekeeping burden").

## I.    A PRESERVATION ORDER IS NECESSARY.

Preservation orders in habeas proceedings are neither unnecessary nor superfluous. *See e.g., El-Banna v. Bush*, 04-CV-1144 (RWR), 2005 WL 1903561, *1 (D.D.C. July 18, 2005) (requiring Respondents to preserve all evidence, documents, and information now or ever in Respondents' possession, custody, or control regarding the individual detainees named in the action):

> The Supreme Court's opinion in <u>Harris v. Nelson</u> makes clear that the discovery provisions of the Federal Rules of Civil

> Procedure do not automatically apply in whole to federal habeas
> corpus proceedings. <u>See</u> 394 U.S. at 294 n.5, 278-99. Therefore,
> the preservation obligations that flow to a litigant from the
> federal discovery rules cannot be presumed to apply to habeas
> litigants absent some express application by a court.
> Accordingly, a preservation order in habeas proceedings,
> particularly in proceedings such as these where there has been no
> full disclosure of the facts on the public record to authorize the
> challenged detention, is not superfluous or unnecessary.

*Id.* at *1.

Although Respondents may argue that the discovery provisions of the Federal Rules of Civil Procedure may not apply to this action, the Court may, pursuant to its own discretion and the All Writs Act, 28 U.S.C. §1651, "fashion appropriate modes of procedure, by analogy to existing rules or otherwise in conformity with judicial usage" to permit a habeas petitioner to develop the facts necessary to support the claims in his petition. *Harris,* 394 U.S. 286, 299 (1969).[1] Pursuant to that authority, this Court may issue an order requiring Respondents to preserve all relevant documents. *See, e.g., Slahi v. Bush,* 05-CV-881 (RWR), 2005 WL 1903682, *1 (D.D.C. July 18, 2005) (as in *El Banna,* ordering respondents to preserve and maintain all evidence, documents, and information without limitation, now or ever in respondents' possession, custody, or control, regarding the individual detained petitioners).

Here, all of the documents relevant to the adjudication of Petitioners' claims, along with the detainees themselves, are in the sole custody and control of Respondents. In addition, Petitioners' counsel's access to their clients is quite restricted. It is almost inconceivable that within these confines, Petitioners could identify specific instances of document destruction. Rather, entry of a preservation order is appropriate in light of the purpose underlying Judge

---

[1] This authority has been codified with respect to habeas actions by persons challenging detention by a state under 28 U.S.C. § 2254. Rule 6(a) of The Rules Governing §2254 Cases states that "[a] party shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so."

Green's February 3, 2005 stay order, namely to preserve the status quo pending resolution of appeals.

In the past several months alone, two reports of lost evidence pertaining to suspected enemy combatants have surfaced; as public scrutiny increases, more may follow. At the very least, these two instances confirm that the harm sought to be avoided by a motion for a preservation order is real. Based upon statements made by military Judge Lt. Col. Mark Sposato (Ex. A) and Capt. John Carr of the Air Force (Ex. B), Petitioners have reason to believe that there is a credible threat that, absent a clear preservation order, evidence relating to persons being held in United States military facilities on suspicion of being enemy combatants may be lost, altered, or perhaps even destroyed.

Judge Lt. Col. Mark Sposato, the military judge in the trial of Pfc. Willie V. Brand, stated in July 2005 that a key piece of evidence, log books requested by defense counsel from the government, appeared to no longer exist. Pfc. Brand is charged with the assault, maiming, and killing of an Afghan suspected of being an enemy combatant while he was being detained in the U.S. military prison in Bagram. The absence of logbooks, which military defense counsel intended to use to show the widespread use of extreme coercion techniques in interrogating suspected enemy combatants, hinders his counsel's ability to mount a defense. (Ex. A at ¶¶ 5, 6.)

Capt. John Carr of the United States Air Force, a prosecutor in the trial of a Guantanamo detainee, complained to his superior officer in an e-mail (disclosed on August 1, 2005) that some exculpatory evidence, including evidence that one of the detainees being prosecuted had been "brutalized," had been lost. Furthermore, according to Capt. Carr, other evidence on the same issue had been withheld by the U.S. military, depriving the defendants of materials that could prove their innocence. (Ex. B at ¶¶ 7, 8.)

Also, among the documents produced by the government in connection with a Freedom of Information Act suit filed by the ACLU is a highly redacted FBI document titled Urgent Report, dated June 25, 2004, which contained reports of abuse of detainees in Iraq by military interrogators (attached hereto as Ex. C). The Urgent Report stated that "{redacted} was providing this information to the FBI based on his knowledge that {redacted] were engaged in a cover-up of these abuses. He stated these cover-up efforts included [redacted]." Given the redactions, it is simply impossible to know whether that "cover up" included the destruction or alteration of documents.

At the present time, it is unclear exactly how long any stay will last. But it is absolutely imperative that any and all potentially crucial information be preserved during the stay so petitioners are not prejudiced by this delay.

## II.   A PRESERVATION ORDER WILL NOT BE UNDULY BURDENSOME FOR RESPONDENTS

Respondents are already obligated to preserve evidence regarding Petitioners' treatment while detained. Orders issued in two other actions require Respondents to preserve "all evidence and information regarding the torture, mistreatment, and abuse of detainees now at the Guantanamo Bay detention facility." *Al-Marri* , 04-CV-2035, 2000 U.S. Dist. LEXIS 17195 at *2 (D.D.C. Mar. 7, 2005); *Abdah*, 04-CV-1254, 2000 U.S. Dist. LEXIS 17189 at *5; *see also El-Banna*, 2005 WL 1903561 at *2-3. However, while these orders require Respondents to preserve documents related to the treatment of Petitioners, they do not explicitly require Respondents to preserve documents related to the basis for Petitioners' detention or other information relevant to their habeas claims. A separate preservation order is necessary here requiring preservation of all documents regarding or related to Petitioners, including, but not limited to, documents regarding or related to:

(i)    Petitioners' apprehension;

    (ii)     Petitioners' detention;
    (iii)    Petitioners' statements or statements of others related to Petitioners;
    (iv)    Interrogations of Petitioners;
    (v)     Petitioners' medical and psychological health and any treatment received; and
    (vi)    Petitioners' proceedings before the Combatant Status Review Tribunal or Annual Review Board and preparation for such proceedings.

Extending Respondents' ongoing obligation with respect to information regarding Petitioners' treatment to encompass all documents regarding Petitioners is not unduly burdensome. The requested order "imposes no greater obligation on respondents than the federal discovery rules' preservation obligations impose on a litigant in a typical civil lawsuit." *El.-Banna*, 2005 WL 1903561 at *2. Respondents have presumably already established procedures for preserving this material as other courts in this judicial district have granted similar relief. *See, e.g., El-Banna*, 2005 WL 1903561 at *3 (granting preservation order with regard to particular individual Guantanamo detainee petitioner); *Slahi*, 2005 Wl 1903682 at *2 (same).

## CONCLUSION

A preservation order is necessary to ensure the fairness and completeness of any evidentiary hearing ultimately held in Petitioners' habeas proceedings, because (i) Respondents have sole possession of the evidence relevant to Petitioners' habeas claims; (ii) Respondents may have no obligation to preserve that evidence; and iii) employees of Respondents may have already destroyed evidence.

A preservation order should be issued concomitant with the stay entered in this case because, like the stay, a preservation order will maintain the status quo between the parties until such time as the stay is lifted and the Court can determine what material is properly subject to discovery. *See, e.g., Abdah*, 2005 U.S. Dist. LEXIS 17189 at *4-5 ("the court finds entry of a protective order appropriate in light of the purpose animating Judge Green's February 3, 2005 stay order, namely to preserve the status quo pending resolution of appeals").

For the foregoing reasons, Petitioners respectfully request that the Court enter an order, in the form attached hereto as Ex. D, requiring Respondents to preserve and maintain all material, documents and information in Respondents' possession, custody or control regarding or related to Petitioners. Petitioners further request oral argument.

Dated: January 6, 2006

Respectfully submitted,
Counsel for Petitioners:

Charles H.R. Peters
Beth D. Jacob
Antony S. Burt
David H. Anderson
Michael W. Drumke
Donald A. Klein
Brian J. Neff
Seth D. Lamden
Ismail Alsheik

SCHIFF HARDIN LLP
623 Fifth Avenue
New York, New York 10022
Tel: (212) 753-5000
Fax: (212) 753-5044
        *and*
6600 Sears Tower
Chicago, IL 60606
Tel: (312) 258-5500
Fax: (312) 258-5600

*Of Counsel*
Barbara J. Olshansky (NY0057)
Director Counsel
Tina Monshipour Foster (TF5556)
Gitanjali S. Gutierrez (GG1234)
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, New York 10012
Tel: (212) 614-6439
Fax: (212) 614-6499

# EXHIBIT
# A



**Local news**  Friday, July 29, 2005

MP's defense asks for acquittal if missing evidence not found

*Chris Roberts*
*El Paso Times*

The defense lawyer for a military policeman accused of assault in the 2002 death of a prisoner in Afghanistan said Thursday that the case against his client should be dropped if the government can't produce evidence that apparently was destroyed.

John P. Galligan, who represents Pfc. Willie V. Brand, had asked for logbooks from the Bagram Control Point, located 40 miles north of Kabul, the Afghan capital. Brand was a guard at the military prison where detainees were held while being evaluated for transport to the Navy-run prison at Guantanamo Bay, Cuba.

"It appears they (logbooks) don't exist," military Judge Lt. Col. Mark Sposato said.

Brand, formerly with the 377th Military Police Company in Cincinnati, is charged with assault, maiming, maltreatment and giving a false official statement. He is accused of using a debilitating knee-strike technique against Dilawar, an Afghan prisoner. A medical examiner testified that Dilawar died from reactions his body had to dead tissue in his thighs, where the knee-strike blows generally landed.

Galligan contends that the logbooks and testimony from witnesses he has requested will show that the knee strikes were commonly used in interrogations orchestrated by military intelligence officials. The sessions included sleep deprivation, which involved chaining prisoners' hands to the ceiling to keep them in a standing position and putting hoods on their heads to disorient them.

"It was routine. It was going on every day," Galligan said after the hearing at Fort Bliss. "The absence of the logbooks hinders our ability to put on a defense."

If the logbooks can't be found, "the charges should be dropped," he told the judge.

However, 1st Lt. David Trainor, an Army prosecutor, argued that in previous hearings, soldiers who said they delivered the knee strikes also testified that they didn't log those blows. "What the defense said is in those logbooks isn't in there," he said.

Prosecutors have argued that the general conditions at the prison aren't relevant to the charges against Brand and that he should be held responsible for his actions against Dilawar and another prisoner, Habibullah, who also died from complications related to the beatings. Brand is among eight soldiers charged in the cases.

Galligan and Capt. Steven Slawinski, Brand's military lawyer, also argued that

three statements Brand gave to investigators should be suppressed because he was intimidated into making them by his commander and others and that he wasn't adequately informed of the charges against him. In one of the statements, prosecutors said, Brand admitted that he delivered more than 30 knee strikes to Dilawar in one session.

The special agents who took the statements said Brand didn't appear uncomfortable or intimidated in the encounters and that he signed off on them after making his own corrections and additions.

"He knew what was going on and he didn't seem tired. He didn't seem scared," Trainor said.

Galligan and Slawinski also argued that delayed pay and denial of health-care benefits to his wife caused by Army bureaucracy combined with menial work assignments amounted to punishment before Brand has been convicted of a crime. They asked Sposato to give Brand 240 days of credit for any prison time he might receive if he is convicted. If convicted on all the charges against him, his faces a maximum 20 years in prison.

Trainor said that every soldier faces problems with the bureaucracy and that ultimately Brand could have fixed them. "He's not taking care of the affairs he needs to take care of," Trainor said. "It isn't the fault of the Army."

Sposato said he would rule on the motions at a later date.

Also on Thursday, Brand said he wants an enlisted panel, similar to a jury, of which one-third would be enlisted soldiers. His general court-martial is scheduled for Aug. 15.

Chris Roberts may be reached at chrisr@elpasotimes.com; 546-6136.

**Copyright © 2004 El Paso Times.**
Use of this site signifies your agreement to the Terms of Service (updated 8/10/2001)

# EXHIBIT B

**The New York Times**
nytimes.com

_____

August 1, 2005

## Two Prosecutors Faulted Trials for Detainees

By NEIL A. LEWIS

WASHINGTON, July 31 - As the Pentagon was making its final preparations to begin war crimes trials against four detainees at Guantánamo Bay, Cuba, two senior prosecutors complained in confidential messages last year that the trial system had been secretly arranged to improve the chance of conviction and to deprive defendants of material that could prove their innocence.

The electronic messages, obtained by The New York Times, reveal a bitter dispute within the military legal community over the fairness of the system at a time when the Bush administration and the Pentagon were eager to have the military commissions, the first for the United States since the aftermath of World War II, be seen as just at home and abroad.

During the same time period, military defense lawyers were publicly criticizing the system, but senior officials dismissed their complaints and said they were contrived as part of the efforts to help their clients.

The defense lawyers' complaints and those of outside groups like the American Bar Association were, it is now clear, simultaneously being echoed in confidential messages by the two high-ranking prosecutors whose cases would, if anything, benefit from any slanting of the process.

In a separate e-mail message, the chief prosecutor flatly rejected the accusations by his subordinates. And a military review supported him.

Among the striking statements in the prosecutors' messages was an assertion by one that the chief prosecutor had told his subordinates that the members of the military commission that would try the first four defendants would be "handpicked" to ensure that all would be convicted.

The same officer, Capt. John Carr of the Air Force, also said in his message that he had been told that any exculpatory evidence - information that could help the detainees mount a defense in their cases - would probably exist only in the 10 percent of documents being withheld by the Central Intelligence Agency for security reasons.

Captain Carr's e-mail message also said that some evidence that at least one of the four defendants had been brutalized had been lost and that other evidence on the same issue had been withheld. The March 15, 2004, message was addressed to Col. Frederick L. Borch, the chief prosecutor who was the object of much of Captain Carr's criticism.

The second officer, Maj. Robert Preston, also of the Air Force, said in a March 11, 2004, message to another senior officer in the prosecutor's office that he could not in good conscience write a legal motion saying the proceedings would be "full and fair" when he knew they would not.

Two Prosecutors Faulted Trials for Detainees - New York Times                    Page 2 of 4

Brig. Gen. Thomas L. Hemingway of the Air Force, a senior adviser to the office running the war crimes trials who provided a response from the Defense Department, said that the e-mail messages had prompted a formal investigation by the Pentagon's inspector general that found no evidence to support the two officers' accusations of legal or ethical problems.

Colonel Borch, who has since retired from the military, sent his own e-mail message to Captain Carr and Major Preston on March 15, 2004, with copies to several other members of the prosecution team the same day, outlining his response.

In his message, Colonel Borch said he had great respect and admiration for Captain Carr and Major Preston. But their accusations, he said, were "monstrous lies." He did not, however, address any specifics, like stacking the panel.

"I am convinced to the depth of my soul that all of us on the prosecution team are truly dedicated to the mission of the office of military commissions," he wrote, "and that no one on the team has anything but the highest ethical principles."

Colonel Borch did not respond to telephone messages left at his home. Captain Carr, who has since been promoted to major, declined to comment when reached by telephone, as did Major Preston. Both Captain Carr and Major Preston left the prosecution team within weeks of their e-mail messages and remain on active duty.

General Hemingway said the assertions in the e-mail messages had been "taken very seriously and an investigation was conducted because of the allegations about potential violations of ethics and the law."

He said in an interview that the Defense Department's inspector general spent about two months investigating the accusations and reviewing the operations of the prosecutor's office. "It disclosed no evidence of any criminal misconduct, no evidence of any ethical violations, and no disciplinary action was taken against anybody," the general said. He also said that no evidence had been "tampered with, falsified or hidden."

General Hemingway declined to discuss any specifics of the two prosecutors' accusations, but he said he now believed that the problems underlying the complaints were "miscommunication, misunderstanding and personality conflicts." The inspector general's report has not been made public but was sent to the Pentagon's top civilian lawyer, he said.

Copies of the e-mail messages were provided to The Times by members of the armed forces who are critics of the military commission process. The documents' authenticity was independently confirmed by other military officials.

The Bush administration and the Pentagon have faced criticism about the legitimacy of the military commission procedures almost since the regulations describing them were announced in 2002.

The rules, which in essence constitute a new body of law distinct from military and civilian law, allow, for example, witnesses to testify anonymously for the prosecution. Also, any information may be admitted into evidence if the presiding officer judges it to be "probative to a reasonable person," a new standard far more favorable to the prosecution than anything in civilian law or military law. It is unclear whether information that may have been obtained under coercion or torture can be admissible.

The trials of the first four defendants began last August in a secure courtroom in a converted dental clinic at the naval base at Guantánamo. Before they could start in earnest, the trials were abruptly halted in November when a federal judge ruled they violated both military law and the United States' obligations to comply with the Geneva Conventions.

But a three-judge appeals court panel that included Judge John G. Roberts, President Bush's Supreme Court nominee, unanimously reversed that ruling on July 15.

Defense Department officials have said they plan to resume the trials in the next several weeks. They said they also planned soon to charge an additional eight detainees with war crimes.

The two trials expected to resume shortly are those of Salim Ahmed Hamdan, a Yemeni who was a driver in Afghanistan for Osama bin Laden; and David Hicks, an Australian who was captured in Afghanistan, where, prosecutors say, he had gone to fight for the Taliban government.

In his March 2004 message, Captain Carr told Colonel Borch that "you have repeatedly said to the office that the military panel will be handpicked and will not acquit these detainees and we only needed to worry about building a record for the review panel" and academicians who would pore over the record in years to come.

Captain Carr said in the message that the problems could not be dismissed as personality differences, as some had tried to depict them, but "may constitute dereliction of duty, false official statements or other criminal conduct."

He added that "the evidence does not indicate that our military and civilian leaders have been accurately informed of the state of our preparation, the true culpability of the accused or the sustainability of our efforts." The office, he said, was poised to "prosecute fairly low-level accused in a process that appears to be rigged."

He said that Colonel Borch also said that he was close to Maj. Gen. John D. Altenburg Jr., the retired officer who is in overall charge of the war crimes commissions, and that this would favor the prosecution.

General Altenburg selected the commission members, including the presiding officer, Col. Peter S. Brownback III, a longtime close friend of his. Defense lawyers objected to the presence of Colonel Brownback and some other officers, saying they had serious conflicts of interest. General Altenburg removed some of the other officers but allowed Colonel Brownback to remain.

In his electronic message, Captain Carr said the prosecution team had falsely stated to superiors that it had no evidence of torture of Ali Hamza Ahmed Sulayman al-Bahlul of Yemen. In addition, Captain Carr said the prosecution team had lost an F.B.I. document detailing an interview in which the detainee claimed he had been tortured and abused.

Major Preston, in his e-mail message of March 11, 2004, said that pressing ahead with the trials would be "a severe threat to the reputation of the military justice system and even a fraud on the American people."

# EXHIBIT
# C



- Iraqi detainee abus...                                                    Page 1

b6 -1
b7C -1

## URGENT REPORT

DATE:    JUNE 25, 2004

TO:    THE DIRECTOR

CC:    Deputy Director Bruce J. Gebhardt
       EAD Cassandra Chandler
       EAD John Pistole
       AD Grant Ashley
       AD Gary Bald
       SC Arthur Cummings

b6 -1     UC
b7C -1    SSA
          CT Watch
          SIOC

FROM:    SACRAMENTO DIVISION

FOR FURTHER INFORMATION CONTACT:    ASAC David A. Picard    b2 -1
                                    (Main Office)    b2 -1
                                                     b6 -1
PREPARER OF URGENT REPORT:    SSA                    b7C -1

b7A -1    PURPOSE: THE FOLLOWING INFORMATION PROVIDES INITIAL DETAILS FROM
b6 -3     AN INDIVIDUAL          WHO OBSERVED SERIOUS PHYSICAL ABUSES OF CIVILIAN DETAINEES
b7C -3    IN         IRAQ DURING THE PERIOD OF          IT IS BEING
b7D -1    FURNISHED TO THE DIRECTOR BASED UPON POTENTIAL SIGNIFICANT
          PUBLIC, MEDIA AND CONGRESSIONAL INTEREST WHICH MAY GENERATE CALLS
          TO THE DIRECTOR.

b7A -1    SUBJECT: PRELIMINARY STATEMENTS MADE BY
b6 -1,3            TO SACRAMENTO SPECIAL AGENTS
b7C -1,3  AND
b7D -1

          DESCRIPTION OF MATTER:

b7A -1
b6 -5
b7C -5

                                was advised that the Sacramento Field Office
          was not aware of any such report.

                              DETAINEES-1609

                                              1609
                                              4910



Iraqi detainee abuses

Page 2

b6 -1
b7C -1

**URGENT REPORT**

b7A -1
b6 -3
b7C -3
b7D -1

_____ came into the Sacramento Field Office and provided
the following:

observed numerous physical abuse incidents of Iraqi civilian
detainees conducted in _____ Iraq.
He described that such abuses included strangulation, beatings,
placement of lit cigarettes into the detainees ear openings, and
unauthorized interrogations.

b7A -1
b6 -3,4
b7C -3,4
b7D -1

_____ was providing this information to
the FBI based on his knowledge that _____ were engaged in a
cover-up of these abuses. He stated these cover-up efforts
included

b7A -1
b6 -3,4
b7C -3,4
b7D -1

b7A -1
b6 -3,4
b7C -3,4
b7D -1

b7A -1
b6 -3,4,5
b7C -3,4,5
b7D -1

an individual did, in fact, make a complaint with Sacramento FBI
Office concerning Iraqi prisoner abuse.

b7A -1
b6 -3,4,5
b7C -3,4,5
b7D -1

DETAINEES-1610

b7A -1
b6 -3
b7C -3
b7D -1

1610

4911



Iraqi detainee abuses    Page 3

b6 -1
b7C -1

b7A -1
b6 -3
b7C -3
b7D -1

**URGENT REPORT**

b7A -1
b6 -3
b7C -3
b7D -1

The Sacramento Division is continuing to interview and will forward FBIHQ all details of his interview in future communications. Investigation in Sacramento is continuing.

DETAINEES-1611

/611

4912

# EXHIBIT D

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MOHAMMED BIN JAIED BIN ALADI AL** ) | |
| **MOHAMMED AL SUBAIE,** Detainee, Guantanamo Bay ) | |
| Naval Station, Guantanamo Bay, Cuba; **JAIED BIN HADI** ) | |
| **AL MOHAMMED AL SUBAIE,** *as next friend of* ) | |
| Mohammed Bin Jaied Bin Aladi Al Mohammed Al Subaie; ) | |
| **BIJAD DEFALLA OTEIBI,** Detainee, Guantanamo Bay ) | |
| Naval Station, Guantanamo Bay, Cuba; **SULTAN** ) | |
| **DEFALLA OTEIBI** *as next friend of* Bijad Defalla Oteibi; ) | |
| **ALGHAMDI ABDULRAHMAN OTHMAN A,** Detainee, ) | |
| Guantanamo Bay Naval Station, Guantanamo Bay, Cuba; ) | |
| **ALGHAMDI AHMED OTHMAN A,** *as next friend of* ) | **ORDER** |
| Alghamdi Abdulrahman Othman A, ) | |
| ) | |
| *Petitioners,* ) | |
| ) | **Civil Action No. 2216-05** |
| v. ) | **(RCL)** |
| ) | |
| **GEORGE W. BUSH,** as President of the United States, ) | |
| The White House, 1600 Pennsylvania Ave., N.W., ) | |
| Washington, D.C. 20500; **DONALD RUMSFELD,** as ) | |
| Secretary, United States, Department of Defense, ) | |
| 1000 Defense Pentagon, Washington, D.C. 20301-1000; ) | |
| **ARMY BRIG. GEN. JAY HOOD,** as Commander, ) | |
| Joint Task Force – GTMO, JTF-GTMO, APO AE 09360; ) | |
| and **ARMY COL. MIKE BUMGARNER,** as Commander, ) | |
| Joint Detention Operations Group - JTF-GTMO, ) | |
| JTF-GTMO, APO AE 09360, ) | |
| ) | |
| *Respondents.* ) | |
| ) | |

## PRESERVATION ORDER

The Court having considered Petitioners' Motion for an Order Requiring Respondents to Preserve and Maintain All Materials, Documents, and Information Regarding or Related to Petitioners, and Respondents' opposition thereto;

IT IS HEREBY ORDERED that Petitioners' Motion is **GRANTED**; and

IT IS FURTHER ORDERED that Respondents shall preserve and maintain all materials, documents, and information in their possession, custody, or control regarding or related to Petitioners Mohammed Bin Jaied Bin Aladi Al Mohammed Al Subaie, Bijad Defalla Oteibi, and Alghamdi Adbulrahman Othman (hereinafter collectively referred to as "Petitioners"), including, but not limited to, documents regarding or related to:

(i)     Petitioners apprehension;
(ii)    Petitioners' detention;
(iii)   Petitioners' statements and statements of others related to Petitioners;
(iv)    Interrogations of Petitioners;
(v)     Petitioners' medical and psychological health and any treatment received; and
(vi)    Petitioners' proceedings before the Combatant Status Review Tribunal or Annual Review Board and preparation for such proceedings.


Dated: _____


_____
Royce C. Lamberth, U.S.D.J

CH1\ 4425578.4

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been served by Certified Mail, Return Receipt Requested, to the following persons:

**Robert J. Katerberg**
ATTORNEY
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW
Washington, D.C.  20530

On this the 6th day of January, 2006.

_____
Louis P. Bonilla

NY\ 5049820.2

CH2\ 1336414.1