**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| ) |  |  |
| ) |  |  |
| **MOHAMMED BIN JAIED BIN ALADI** ) |  |  |
| **AL MOHAMMED AL SUBAIE,** *et al.*, ) |  |  |
| *Petitioners,* ) |  |  |
| ) | **Civil Action No. 2216-05 (RCL)** |  |
| *v.* ) |  |  |
| ) |  |  |
| **GEORGE W. BUSH,** *et al.*, ) |  |  |
| *Respondents.* ) | **[ORAL ARGUMENT REQUESTED]** |  |
| ) |  |  |
| ) |  |  |

**PETITIONERS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR ORDER
REQUIRING RESPONDENTS TO PRESERVE AND MAINTAIN ALL MATERIALS,
DOCUMENTS, AND INFORMATION REGARDING OR RELATED TO PETITIONERS**

Petitioners Mohammed Bin Jaied Bin Aladi Al Mohammed Al Subaie, Bijad Defalla Oteibi,

and Alghamdi Adbulrahman Othman A (hereinafter referred to collectively as "Petitioners"),

together with their respective Next Friends as co-Petitioners, by and through undersigned counsel,

submit the following Reply Memorandum in support of their motion for an order requiring Respon-

dents to preserve and maintain all materials, documents, and information regarding or related to Peti-

tioners, including, but not limited to, documents regarding or related to:

(i)     Petitioners' apprehension;
(ii)    Petitioners' detention;
(iii)    Petitioners' statements or statements of others related to Petitioners;
(iv)    Interrogations of Petitioners;
(v)    Petitioners' medical and psychological health and any treatment received; and
(vi)    Petitioners' proceedings before the Combatant Status Review Tribunal or Annual
Review Board and preparation for such proceedings.

Respondents' opposition to Petitioners' motion is replete with half-truths, inconsistencies, and non-sequiturs that skirt the real issue here: whether this Court should invoke its inherent power to order that evidence be preserved while Respondents, who have exclusive control of that evidence, seek to stay, and further prolong, these proceedings.

Respondents argue initially that Petitioners' motion should be denied because Respondents "anticipate filing in ... the instant case a motion to dismiss or for other appropriate relief" based on the Detainee Treatment Act of 2005 (Opp. Mem. at 1-2). But any extended stay in this matter – while the D.C. Circuit and/or Supreme Court decides whether the Detainee Treatment Act has retro-active effect – clearly militates *in favor of*, not against, the entry of the preservation order sought by Petitioners. Any extended stay increases the risk that evidence could be inadvertently lost or de-stroyed, and heightens the need for a clear preservation order.

Claiming that the "weight of authority" is that the requirements for issuance of a preliminary injunction have to be met before a preservation order can issue (Opp. Mem. at 2-3), Respondents reject the standard for entry of a preservation order that has been adopted by the *majority* of judges who have addressed the issue in Guantanamo detainee cases. *See, e.g., Al-Marri v. Bush*, 2004-CV-2035, 2005 U.S. Dist. LEXIS 17195 at * 1-2 (D.D.C. Mar. 7, 2005) (Ex. A) ("a document preserva-tion order is no more an injunction than an order requiring a party to identify witnesses or to produce documents in discovery" [quoting *Pueblo of Laguna v. United* States, 60 Fed. Cl. 133 (2004)]); *Ab-dah v. Bush*, 2004-CV-2035, 2005 U.S. Dist. LEXIS 17189 at * 4 (D.D.C. June 10, 2005) (HHK) (Ex. B) (same). *See also Al-Shiry v. Bush*, 2005-CV-490 (D.D.C. Mar. 23, 2005 (PLF) (dkt no. 14) (Ex. C) (granting petitioner's motion for a preservation order).

Respondents cite to only one contrary "holding" in a Guantanamo detainee case -- *Battayav v. Bush*, 2005-CV-714 (D.D.C. May 19, 2005)(RBW) (dkt no. 12) (Ex. D) -- but fail to address two significant aspects of that decision. First, while referencing an injunction standard, the court in *Bat-*

*tayav* concluded ultimately that it did not have to enter a preservation order because "respondents are already under an obligation to preserve relevant documents" as a result of the preservation order entered in *Al-Marri*. *Id. at 4. But see* discussion *infra* at 8-9 (the existing protective order does not cover particular evidence related to this case that needs to be preserved). Secondly, the decision in *Battayav* was based on an unreported magistrate's decision (*Madden v. Wyeth*, 2003 WL 21443404 (N.D. Tex. Apr. 16, 2003)) that relied principally on the 40-year old case of *Humble Oil & Refining Co. v. Harang*, 262 F. Supp. 39 (E.D.La. 1966), decided *before* the Federal Rules of Civil Procedure changes addressed in *Pueblo of Laguna.*

As the *Pueblo of Laguna* court noted, Article III courts have inherent power to order evidence preserved and have exercised that power increasingly as the Federal Rules of Civil Procedure have evolved. 60 Fed. Cl. at 135. In rejecting *Madden* and similar cases, the court in *Pueblo of Laguna* observed:

> [T]he more recent of these decisions ignore significant changes made to the Federal Rules of Civil Procedure since the 1960s, further establishing the case management powers of judges. In the court's view, a document preservation order is no more an injunction than an order requiring a party to identify witnesses or to produce documents in discovery. While such pretrial and discovery orders take the basic form of an injunction (an order to do or not to do something), the decisional law suggests that, in issuing them, courts need not observe the rigors of the four-factor analysis ordinarily employed in issuing injunctions. In the court's view, the same ought to hold true for preservation orders. In particular, contrary to defendant's claim, the court sees no reason for it to consider whether plaintiff is likely to be successful on the merits of its case in deciding whether to protect records from destruction. In the court's view, such an approach would be decidedly to put the cart before the horse.

*Id*. at 138 n.8 (citations omitted).

While Respondents argue that *Capricorn Power Co. v. Siemens Westinghouse Power*, 220 F.R.D. 429 (W.D.Pa. 2004) criticizes the *Pueblo of Laguna* test (Opp. Mem. at 3), the court

in *Capricorn*, in fact, *adopted* the *Pueblo of Laguna* approach to preservation orders and expressly *rejected* the line of authority relied on by Respondents:

> The Court agrees with the comment of the Court of Federal Claims
> in footnote eight of *Pueblo of Laguna* that the form, *but not the
> substance* of a preservation order, is one of an injunctive order.
> *** [A]doption of the four part test used for injunctive relief is *not*
> appropriate in the judicial determination of motions seeking pres-
> ervation orders.

220 F.R.D. at 433 (emphasis added). The two-part test adopted in *Capricorn* is essentially a re-finement of the two-part test in *Laguna*.

Recognizing the weakness of their legal position, Respondents argue that Petitioners meet neither prong of the *Pueblo of Laguna* standard (Opp. Mem. at 3-8) -- i.e., that a preservation order be (i) "necessary" and (ii) "not unduly burdensome." 60 Fed. Cl. at 138. Respondents' arguments are misplaced.

In arguing that a preservation order is unnecessary, Respondents repeatedly mention their obligation to preserve evidence.[1] But this is unavailing for two reasons. First, as other courts presented with such statements have held, these assertions by Respondents go to burden, not to necessity, and simply prove that "entering a preservation order will inflict no harm or prejudice upon them." *Al-Marri*, 2005 U.S. Dist. LEXIS 17195 at * 2. *Accord Abdah*, 2005 U.S. Dist. LEXIS 17189 at * 5. Secondly, the "representations" made by Respondents are patently incon-sistent. On the one hand, Respondents argue that they "have numerous independent reasons for ensuring the preservation of the *documents in question*" (Opp. Mem. at 4) (emphasis added). On the other hand, Respondents claim that the order sought by Petitioners -- *for the documents in*

---

[1] *See* Opp. Mem. at 4 ("[r]espondents would not compromise ... investigations or prosecutions by destroy-ing or sanctioning the destruction of documents pertinent to such investigations"); 4-5 ("the ongoing de-tention and intelligence-gathering mission of the military at Guantanamo Bay should dispel any motion that respondents would destroy documents related to that mission"); and 5 ("respondents are well aware of their obligation not to destroy evidence that may be relevant in pending litigation").

question -- "is overbroad and potentially burdensome to the extent it goes beyond what might otherwise be permissible with respect to any discovery that might ever be appropriate in a habeas case" (Opp. Mem. at 6-7).

Respondents are not the arbiters of what should be preserved and what can be destroyed;[2] the Court is. That indeed is the purpose of a carefully crafted preservation order. The order requested by Petitioners imposes no greater obligation on Respondents than the federal discovery rules' preservation obligations impose on a litigant in a typical civil lawsuit. As one judge faced with Respondents' opposition to a similar preservation order has noted: "Respondents' contrary view of the requested order ... may *underscore* the need for a preservation order." *El-Banna v. Bush*, 04-CV-1144, 2005 WL 1903561 at *2 (D.D.C. July 18, 2005) (Ex. E) (emphasis added).

The contention by Respondents that Petitioners' proposed preservation order "goes beyond what might otherwise be permissible with respect to any discovery that might ever be appropriate in a habeas cases" rests on Respondents' misreading of *Harris v. Nelson*, 394 U.S. 296 (1969) (Opp. Mem. at 7-8). As the Court in *El-Banna* noted in rejecting this argument, *Harris* stands for the proposition that "'the power of inquiry on federal habeas corpus is plenary' and its exercise depends entirely on the circumstances." 2005 WL 1903561 at *2 (quoting *Harris*).[3]

_____

[2] Respondents do not even indicate in their papers how the proposed preservation order is purportedly overbroad or, specifically, what categories of documents are claimed to be inappropriate.

[3] *Accord El-Banna* at *1-2:

> Further, *Harris v. Nelson* also makes clear that a district court's authority to issue orders pursuant to 28 U.S.C § 1651 in aid of its fact-finding obligations in habeas corpus proceedings is intended to be flexible and should be exercised as the circumstances require for the proper and just disposition.

> [The Supreme Court has] held explicitly that the purpose and function of the All Writs Act to supply the courts with the instruments needed to perform their duty [to issue orders appropriate to assist them in conducting factual inquiries] ... extend to habeas corpus proceedings.

(continued...)

*See also Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) ("[28 U.S.C] § 2243 provides that 'the person detained may, under oath, deny the facts set forth in the return or allege any other materials facts,' and § 2246 allows the taking of evidence in habeas proceedings by deposition, affidavit, or interrogatories").

Respondents also argue that "Petitioners' proposal, improperly, and without good cause, would put Respondents in the position of having to take action with respect to a wide range of documents without having the opportunity to utilize the process of objection and litigation available in the discovery context to fine tune or challenge discovery requested based on, for example, overbreadth, relevance, or burden" (Opp. Mem. at 8). But this argument misses the point -- for two reasons. First, it mistakenly equates *preservation* obligations with *production* obligations and erroneously assumes that Respondents will have no opportunity to litigate future discovery requests. *El Banna*, 2005 WL 1903561 at *2. Secondly, it disregards the fact that Petitioners are prepared to proceed with discovery; it is *Respondents* who have refused to engage in discovery and who have sought to stay these proceedings.

Further, Respondents attempt to create a red herring by suggesting that Petitioners have not proved that Respondents have intentionally destroyed documents at Guantanamo (Opp.

---

> At any time in the [habeas corpus] proceedings, when the court considers that it is necessary to do so in order that a fair and meaningful evidentiary hearing may be held so that the court may properly "dispose of the matter as law and justice require," either on its own motion or upon cause shown by the petitioner, it may issue such writs and take or authorize such proceedings with respect to development, before or in conjunction with the hearing of the facts relevant to the claims advanced by the parties, as may be "necessary or appropriate in aid of [its jurisdiction] ... and agreeable to the usages and principles of law." 28 U.S.C. § 1651.
>
> ... Obviously, in exercising this power, the court may utilize familiar procedures, as appropriate, whether these are found in the civil or criminal rules or elsewhere in the "usages and principles of law."

394 U.S. at 299-300 (footnote omitted).

Mem. at 4, 6). But this certainly is not the test, even under cases cited by Respondents. *See, e.g., Capricorn*, 220 F.R.D. at 435 ("In appropriate cases it becomes a judicial duty to protect a party from likely harm by action to prevent *the loss* or destruction of evidence, thereby ensuring that the party may prosecute or defend its case in a court of law." (emphasis added)). *Cf. Pueblo of Laguna*, 60 Fed. Cl. at 138 (referencing loss *or* destruction of documents).

The potential exposure of this case, and others like it, make it particularly important that this Court zealously pursue its responsibility to make sure that evidence is not lost or destroyed. In many respects, the entire world looks to the United States court system as a model for assuring that the rule of law is followed. In that respect, it would be particularly problematic for this Court to refuse to enter a relatively straight-forward order that requires key evidence be pre-served, only to have such evidence later be lost or destroyed and the government to claim that it did not realize there was any obligation to preserve it. When a case is pending against the gov-ernment in a United States court, the world expects that the Court will not allow important evi-dence subject to the government's sole control to be lost. For the Court to do nothing, as Re-spondents suggest, runs the very real risk that the stature of this Court, and the rule of law gener-ally, will be undermined should important evidence later turn up missing.

Respondents do *not* deny that documents relating to Guantanamo detainees have been lost (Opp. Mem. at 6). Rather, Respondents argue as to some of these documents that the docu-ments do "not concern the subject matter of this case, which solely involves detentions at Guan-tanamo" (*id.*). But documents relating to Petitioners' apprehension, statements, and the like are no less relevant because they are located outside of Guantanamo. *See Pueblo of Laguna*, 60 Fed. Cl. at 139 (past handling of records in another case indicating risk of loss or destruction of re-cords can warrant issuance of preservation order). In any event, there *is* evidence that records are missing from Guantanamo. Eric Saar, a former interpreter who worked at Guantanamo Bay

with the current detainees, has stated that at least one video of abuse of a detainee is missing from the records at Guantanamo. *See* Erik Saar & Viveca Novak, Inside the Wire 102 (Penguin Press 2005) (relevant excerpts attached at Exhibit F). In the book, Saar reports that Initial Reaction Forces ("IRF"), "a squad of five MPs . . . would subdue the captive with brute strength." *Id.* at 72. The IRF teams were videotaped when they "subdued" captives -- the "tapes were used for training." *Id.* at 94. One detainee was subjected to the IRF process at Camp X-ray, when it "was a little more ad hoc . . . [and] meant receiving a good old-fashioned ass whipping, after which the lucky detainee would be hogtied – made to kneel with his hands behind his back and his hand and foot shackles locked together – for four hours." *Id.* at 101-2. When one of the translators sought to investigate this detainee's beating, she "learned . . . that the MP's had somehow lost the videotape of that particular IRF action." *Id.* at 102.

Finally, Respondents argue that a preservation order is unnecessary "because Judge Kessler has already entered an order to 'preserve and maintain all evidence and information regarding the torture, mistreatment, and abuse of detainees now at the Guantanamo Bay detention facility.' *Al-Marri v. Bush*, No. 04-CV-2035 (GK), Order (dkt. no. 25) (Mar. 7, 2005)" (Opp. Mem. at 5 n.4). But Respondents simply miss the point. Petitioners are not moving for a preservation order as to evidence of torture, mistreatment, and abuse. *See* Petitioners' 1/6/06 Mem. at 6. That is covered by the general orders entered in *Al-Marri* and other cases. Petitioners are, however, moving for a preservation order as to documents relating to Petitioners individually, including, *inter alia*, documents related to the basis for their detention. *See, e.g., El-Banna* (distinguishing between the two orders):

> [I]t is hereby
>
> ORDERED that petitioners' motions, insofar as they seek preservation orders governing evidence, documents, and information regarding the torture, mistreatment and/or abuse of detainees held at the Guan-

tanamo Bay detention facility be, and hereby are, DENIED without preju-
dice as moot. *It is further*

> *ORDERED that petitioners' motions otherwise be, and hereby are,
> GRANTED. Respondents shall preserve and maintain all evidence, docu-
> ments and information, without limitation, now or ever in respondents'
> possession, custody or control, regarding the individual detained petition-
> ers in these cases.*

2005 WL 1903561 at *2-3 (emphasis added).

In short, loss of the documents referenced in Petitioners' proposed preservation order
would significantly harm Petitioners by, *inter alia*, depriving them of proof that their present im-
prisonment is unlawful and thus depriving them of their liberty. In contrast, it would be no bur-
den at all on the government to preserve this evidence.

# CONCLUSION

For the reasons discussed above, and in their original memorandum, Petitioners respectfully request that their motion for a preservation order be granted.

Dated: New York, New York
        January 23, 2006

                            Respectfully submitted,

                            Counsel for Petitioners

                            _____
                            Charles H. R. Peters
                            Beth D. Jacob
                            Antony S. Burt
                            David H. Anderson
                            Michael W. Drumke
                            Donald A. Klein
                            Brian J. Neff
                            Seth D. Lamden
                            Ismail Alsheik

                            SCHIFF HARDIN LLP
                            623 Fifth Avenue
                            New York, New York 10022
                            Tel: (212) 753-5000
                            Fax: (212) 753-5044
                                *and*
                            6600 Sears Tower
                            Chicago, IL 60606
                            Tel: (312) 258-5500
                            Fax: (312) 258-5600


                            *Of Counsel*
                            Barbara J. Olshansky (NY0057)
                            Director Counsel
                            Tina Monshipour Foster (TF5556)
                            Gitanjali S. Gutierrez (GG1234)
                            CENTER FOR CONSTITUTIONAL RIGHTS
                            666 Broadway, 7th Floor
                            New York, New York 10012
                            Tel: (212) 614-6439
                            Fax: (212) 614-6499

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been served by Certified Mail, Return Receipt Requested, to the following persons:

**Robert J. Katerberg**
ATTORNEY
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW
Washington, D.C. 20530

On this the 23rd day of January 2006.

_Louis P. Bonilla_
Louis P. Bonilla

NY\ 5049820.2

CH2\ 1336414.1