## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **MOHAMMED BIN JAIED BIN ALADI AL MOHAMMED AL SUBAIE,** Detainee, Guantánamo Bay Naval Station, Guantánamo Bay, Cuba; **JAIED BIN HADI AL MOHAMMED AL SUBAIE,** *as next friend of* Mohammed Bin Jaied Bin Aladi Al Mohammed Al Subaie; **BIJAD DEFALLA OTEIBI,** Detainee, Guantánamo Bay Naval Station, Guantánamo Bay, Cuba; **SULTAN DEFALLA OTEIBI** *as next friend of* Bijad Defalla Oteibi; **ALGHAMDI ABDULRAHMAN OTHMAN A,** Detainee, Guantánamo Bay Naval Station, Guantánamo Bay, Cuba; **ALGHAMDI AHMED OTHMAN A,** *as next friend of* Alghamdi Abdulrahman Othman A, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| *Petitioners/Plaintiffs,* | ) **Civil Action No. 05-2216**<br>) **(RCL)** |
| v. | )<br>) |
| **GEORGE W. BUSH,** as President of the United States, The White House, 1600 Pennsylvania Ave., N.W., Washington, D.C. 20500; **DONALD RUMSFELD,** as Secretary, United States, Department of Defense, 1000 Defense Pentagon, Washington, D.C. 20301-1000; **ARMY BRIG. GEN. JAY HOOD,** as Commander, Joint Task Force – GTMO, JTF-GTMO, APO AE 09360; and **ARMY COL. MIKE BUMGARNER,** as Commander, Joint Detention Operations Group - JTF-GTMO, JTF-GTMO, APO AE 09360, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| *Respondents/Defendants.* | )<br>)<br>)<br>) |

## RESPONSE TO RESPONDENTS' NOTICE AND
## RENEWED MOTION FOR ENTRY OF THE PROTECTIVE ORDER

Petitioners, by their undersigned attorneys, submit this pleading (1) responding to

Respondents' July 7, 2006, Notice setting forth their position concerning the effect of the

Detainee Treatment Act of 2005 ("DTA"), Pub. L. No. 109-148, in light of the decision in

*Hamdan v. Rumsfeld*, 548 U.S. ___, 126 S. Ct. 2749 (2006); and (2) renewing the request that the standard Protective Order be entered in this matter.

**BACKGROUND**

Petitioners filed their Petition for *Habeas Corpus* on November 14, 2005.

On December 22, 2005, Respondents filed a Motion to Stay Proceedings pending the Court of Appeals for the District of Columbia's determination of the conflicting decisions in *In re Guantanamo Detainee Cases*, 355 F. Supp. 2d 443 (D.D.C. 2005) and *Khalid v. Bush*, 355 F. Supp. 2d 311 (D.D.C. 2005). In their Motion to Stay Proceedings, Respondents emphasized that the application would not preclude counsel for Petitioners from having access to their clients:

> In seeking a stay, however, respondents do not intend thereby to block counsel access to properly represented petitioners. To that end, respondents do not object to entry of the protective order previously entered in other Guantanamo detainee cases, along with appropriate supplementary orders, to permit such access. See Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba in In re Guantanamo Detainee Cases, No. 02-CV-0299, et al., (D.D.C. Nov. 8, 2004) (attached as Exhibit A); Order Supplementing and Amending Filing Procedures Contained in November 8, 2004 Amended Protective Order in In re Guantanamo Detainee Cases, No. 02-CV-0299, et al., (D.D.C. Dec. 13, 2004) (attached as Exhibit B); Order Addressing Designation Procedures for "Protected Information" in In re Guantanamo Detainee Cases, No. 02-CV-0299, et al., (D.D.C. Nov. 10, 2004) (Attached as Exhibit C).

(Resp. Motion to Stay at 4 (footnote omitted).) Thus, Respondents included with their Motion a Proposed Order which provided for entry of the standard protective order that has been adopted in the Guantánamo *habeas* cases (hereinafter "the Protective Order").

In response to Respondents' Motion to Stay, Petitioners did not object to the entry of a stay, but argued that any stay should not relieve Respondents of their obligation to produce factual returns. Petitioners agreed with Respondents that the Protective Order should be entered. (1/6/06 Mem. in Opp. at 11.)

On December 30, 2005, the President signed into law the DTA. After initially expressing an intention to file a DTA-based motion to dismiss (1/11/06 Resp. Opp. to Mot. for Preservation

Order at 1-2), Respondents later argued that there should be a stay of all proceedings in this case pending the appellate courts' determination of the effect of the DTA.  (1/17/06 Resp. Reply Mem. in Support of Mot. to Stay at 2.)

On April 24, 2006, Petitioners filed a Notice of Supplemental Authority.  In that Notice, Petitioners advised the Court that the Protective Order had been entered in a number of other Guantánamo *habeas* cases subsequent to the passage of the DTA.  Petitioners reiterated their request for entry of the Protective Order.

On June 29, 2006, the United States Supreme Court issued its decision in *Hamdan*.  In its decision, the Court concluded that the DTA did not strip the courts of jurisdiction over petitions for *habeas corpus* pending at the time the DTA was enacted.  126 S. Ct. at 2769 n. 15.

After *Hamdan* was decided, undersigned counsel contacted counsel for Respondents to ask whether, in light of the Supreme Court's ruling, Respondents would now consent to the entry of the Protective Order in this matter.  Counsel for Respondents advised that Respondents would not consent.

On July 7, 2006, Respondents filed their Notice, asserting that notwithstanding the ruling of the Supreme Court in *Hamdan*, this Court lacks jurisdiction over this Petition.  Nevertheless, on the same date, Respondents filed in this Court a Motion for Procedures Relating to Review of Certain Detainee Materials.

The Protective Order has not been entered in this matter.  As a result, counsel for Petitioners have been unable to meet or speak with their clients during the eight months this case has now been pending.[1]

---

[1] On or about May 18, 2006, Petitioners Mohammed Bin Jaied Bin Aladi Al Mohammed Al Subaie and Alghamdi Abdulrahman Othman A were transferred to the custody of authorities in Saudi Arabia.

## ARGUMENT

**I.    RESPONDENTS' ASSERTION THAT, NOTWITHSTANDING
*HAMDAN*, THE DTA DIVESTS THIS COURT OF JURISDICTION
SHOULD BE REJECTED.**

Section 1005(e)(1) of the DTA provides that no court shall have jurisdiction to consider "an application for a writ of habeas corpus filed by or on behalf of an alien detained by the Department of Defense at Guantanamo Bay, Cuba." Respondents previously argued that this provision applies to pending cases and, thus, had the effect of divesting the district court of jurisdiction over all Guantánamo *habeas* cases.

Respondents now concede, as they must, that in *Hamdan* the Supreme Court rejected their Section 1005(e)(1) argument. After reviewing the statutory text and legislative history, the Supreme Court held that "§1005(e)(1) does not strip federal courts' jurisdiction over cases pending on the date of the DTA's enactment." 126 S. Ct. at 2769 n.15. Because *Hamdan*, like the case at bar, involved a *habeas* petition that was pending at the time of the enactment of the DTA, the exercise of jurisdiction was appropriate.

Nevertheless, Respondents cling to their DTA argument. They now assert that jurisdiction in this Court is barred by the exclusive review provisions of the DTA -- in particular, the provision that vests the District of Columbia Circuit Court of Appeals with exclusive authority to review "the validity of any final decision of a Combatant Status Review Tribunal that an alien is properly detained as an enemy combatant." § 1005(e)(2).[2] Respondents' argument has no merit.

---

[2] Section 1005(e)(3) pertains to review of the decision of any military commission concerning the detainee. Petitioners have not been the subject of any such commissions; therefore, Section 1005(e)(3) has no bearing on this case.

As the *Hamdan* Court recognized, "subsections (e)(2) and (e)(3) grant jurisdiction only over actions 'to determine the validity of any final decision' of a CSRT or commission." 126 S. Ct. at 2768-69.  Thus, a petitioner who is "not contesting any 'final decision' of a CSRT or military commission . . . does not fall within the scope of subsection (e)(2) or (e)(3)." *Id.* at 2769.  Expanding on this point, the Court indicated that while a challenge to the final decision of the CSRT would be subject to the exclusive review requirement of Section 1005(e)(2), *habeas* actions seeking more fundamental relief would not:

> There is nothing absurd about a scheme under which pending habeas actions—
> particularly those, like this one, that challenge the very legitimacy of the tribunals whose
> judgments Congress would like to have reviewed—are preserved, and more routine
> challenges to final decisions rendered by those tribunals are carefully channeled to a
> particular court and through a particular lens of review.

*Id.*[3]

The case at bar is not a routine challenge to the final decision of a CSRT.  Petitioners assert numerous causes of action, allege that the Executive's conduct and policies exceed the bounds of Article II of the Constitution, and seek, in addition to declaratory and injunctive relief, *habeas corpus* – the remedy that permits them to demand either release to freedom or legal justification for imprisonment.  In doing so, they deny the legitimacy of the CSRTs.  For example, their Petitions allege, among other things, that:  (1) Petitioners are not properly detained subject to President Bush's authority as Commander-in-Chief, under the laws and usages of war, or Joint Resolution 23, Authorization for Use of Military Force, Pub. L. No. 107-40, 115 Stat. 224 (Sept. 18, 2001) ("AUMF"); (2) the executive order issued by President Bush, 66 Fed. Reg. 57,833 § 2 (Nov. 13, 2001), was not authorized by Congress and is beyond the scope of the Joint Resolution; (3) Petitioners have been denied the process due to them under the

---

[3] *Cf. id.* at 2815 (Scalia, J., dissenting) ("By drawing a negative inference *à la Lindh*, the Court supplants this exclusive-review mechanism with a dual-review mechanism for petitioners who were expeditious enough to file applications challenging the CSRTs or military commissions before December 30, 2005.").

common law and the Due Process Clause of the Fifth Amendment, domestic civil and military

law, and international law; (4) the conditions of confinement at Guantánamo are in violation of

the Constitution, the regulations of the United States Military, the Geneva Convention, the

International Convention on Civil and Political Rights, the American Declaration on the Rights

and Duties of Man, the 1954 Convention Relating to the Status of Refugees and customary

international law; and (5) Petitioners are at risk of being rendered without lawful procedures to a

country that engages in torture during interrogations and incarceration.  (Petition for *Habeas*

*Corpus*, filed 11/14/05.)  Petitioners seek relief under the Fifth Amendment, the Third and

Fourth Geneva Conventions, customary international humanitarian and human rights law, the

Alien Tort Statute, Article II of the Constitution, the Administrative Procedure Act, the

Convention Against Torture, the 1954 Convention Relating to the Status of Refugees, 28 U.S.C.

§§ 2241 and 2242, and the Declaratory Judgment Act.  (*Id.*)  Accordingly, Respondents' attempt

to recast Petitioners' action as nothing more than a challenge to the validity of their CSRT

decisions must fail.[4]

Subsequent to the *Hamdan* decision, this Court has recognized its authority to exercise

jurisdiction over the Guantánamo *habeas* cases.  By Order dated July 3, 2006, this Court entered

the Protective Order in the matter of *Al Darby v. Bush,* Case No. 05-2371 (RCL) (Ex. A.)

Similarly, in a July 5, 2006, Order in *Hamoud v. Bush*, Judge Roberts concluded that "the

---

[4]  Given the breadth of the relief sought by Petitioners, the *Hamdan* Court's comment that "[t]here may be habeas cases that were pending in the lower courts at the time the DTA was enacted that do qualify as challenges to 'final decision[s]' within the meaning of subsection (e)(2) or (e)(3)," 126 S. Ct. at 2769, has no bearing here.  *Cf. id.* at 2817 (Scalia, J., dissenting) ("[t]he vast majority of pending petitions, no doubt, do not relate to military commissions at all, but to more commonly challenged aspects of 'detention' such as the terms and conditions of confinement").

[*Hamdan*] Court made clear that this court retains jurisdiction over this *habeas corpus* petition." (Ex. B at 1 n. 1.)[5]

Moreover, Respondents have themselves recognized the continued authority of this Court to exercise its jurisdiction over these matters. On the same day Respondents filed their Notice, they filed in this case and others a Motion for Procedures Relating to Review of Certain Detainee Materials.[6] Respondents cannot have it both ways: requesting the assistance of this Court when it suits their needs, and simultaneously denying the authority of the Court to act on any request for relief filed by Petitioners. *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001).[7]

Based upon the foregoing, Respondents' assertion that this Court lacks jurisdiction over this matter is clearly erroneous and should be rejected.[8]

---

[5] As Petitioners noted in their April 24, 2006, Notice of Supplemental Authority, even before *Hamdan* was decided, a number of district court judges rejected the assertion that the DTA precluded entry of the protective order.

[6] Aside from any jurisdictional issue, Respondents' Motion for Procedures illustrates the untenability of Respondents' position *vis-à-vis* the Protective Order. Respondents have filed a Motion, on notice to counsel for Petitioners, seeking various types of affirmative relief, while at the same time depriving counsel of any ability to consult with Petitioners regarding that Motion.

[7] Respondents cannot avoid the inconsistency of their actions merely by including in their Motion for Procedures a statement that the Motion is filed "without prejudice to respondents' position that the Court lacks jurisdiction." (Motion for Procedures at 2 n. 3.)

[8] Any decision that the DTA eliminates jurisdiction over Petitioners' pending habeas claims, notwithstanding *Hamdan,* would necessarily violate, among other things, the Suspension Clause, the Fifth Amendment's guarantees of due process and equal protection, and the prohibition against Bills of Attainder. Petitioners respectfully request the opportunity to brief those issues should the Court conclude that the DTA divests it of jurisdiction over this action.

## II.    THE PROTECTIVE ORDER SHOULD BE ENTERED.

Over two years ago, the United States Supreme Court affirmed the right of Guantánamo detainees to pursue in this Court petitions for *habeas corpus* challenging the legality of their detention and their treatment by Respondents. *Rasul v. Bush*, 542 U.S. 466 (2004). It is beyond argument that the exercise of that right is meaningless if a petitioner is denied the ability to communicate with his attorneys. *See Chandler v. Fretag*, 348 U.S. 3, 10 (1954) ("a defendant must be given a reasonable opportunity to employ and consult with counsel; otherwise, the right to be heard by counsel would be of little worth"). *See also Al Odah v. United States*, 346 F. Supp. 2d 1, 5-7 (D.D.C. 2004) (detainees "are entitled to be represented by counsel" in their habeas proceedings).

Petitioner Oteibi's *habeas* Petition has now been pending for approximately eight months. Because no Protective Order has been entered, Petitioner has been denied access to his attorneys. Indeed, we are unable to even confirm that Petitioner is aware that he is being represented by counsel and that a Petition for *habeas corpus* was filed on his behalf.

Respondents' attempt to continue to deny Petitioner access to counsel should be rejected. As noted above, there is no merit to Respondents' argument that, notwithstanding *Hamdan*, entry of the Protective Order is precluded by the DTA.[9] This Court has the authority to enter the Protective Order, and there is no justification for further delay of the entry of that order while jurisdictional arguments are being litigated. This point was recognized by Magistrate Judge Kay in another Guantanamo *habeas* case: *Adem v. Bush*, No. 05-cv-723(RWR)(AK) (D.D.C. Mar. 14, 2006). Ruling on a motion seeking to compel the government's compliance with the terms of a

---

[9] Despite the weakness of their argument, Respondents will likely ask the Supreme Court to address the matter if, as we expect, the D.C. Court of Appeals rules against them. Undoubtedly, Respondents will argue that entry of the Protective Order should be further delayed until that appeal is decided. Thus, under Respondents' approach, it could be well over another year before counsel is permitted meet with Petitioners.

Protective Order that had been entered pre-DTA, Magistrate Judge Kay rejected the suggestion

that issues relating to counsel's access to their clients should be deferred:

> As an initial matter, the Court respectfully declines Respondents' invitation to defer ruling on Adem's motion pending resolution of the jurisdictional and retroactivity questions raised by the Detainee Treatment Act of 2005 (the "DTA"). The issues raised by Adem's motion seeking access to counsel pursuant to the Amended Protective Order do not implicate any of the jurisdictional questions currently pending in the D.C. Circuit and the Supreme Court.
>
> . . .
>
> "[A] protective order, like any ongoing injunction, is always subject to the inherent power of the district court." *Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 535 (1st Cir. 1993) . . . .

*Id.* at 21-22 (footnote omitted).

Respondents respectfully request that the Court exercise its authority to entry the

Protective Order in this matter.[10]

---

[10] Moreover, even if this matter could somehow be deemed a challenge to a final decision of the CSRT, entry of the Protective Order would not impinge upon the jurisdiction of the D.C. Circuit Court of Appeals. Indeed, entry of an order permitting access to the client would be necessary to counsel's representation of Petitioner in such an appeal. As Magistrate Judge Kay observed in *Adem v. Bush,* because counsel presumably would continue to represent the detainee in the D.C. Circuit Court of Appeals, access would remain an issue even if the DTA was held to preclude district court *habeas* jurisdiction. *Id.* at n. 25.

## CONCLUSION

Based upon the foregoing, Petitioners respectfully request that the Court issue an order entering the standard Guantánamo *habeas* Protective Order in this case.

Dated: New York, New York
     July 20, 2006

                    Respectfully submitted,

                    Counsel for Petitioners:

                    Charles H.R. Peters
                    Beth D. Jacob
                    Antony S. Burt
                    Michael W. Drumke
                    Donald A. Klein
                    Brian J. Neff

                    SCHIFF HARDIN LLP
                    623 Fifth Avenue
                    New York, New York 10022
                    Tel: (212) 753-5000
                    Fax: (212) 753-5044
                        *and*
                    6600 Sears Tower
                    Chicago, IL 60606
                    Tel: (312) 258-5500
                    Fax: (312) 258-5600

                    *Of Counsel*
                    Barbara J. Olshansky (NY0057)
                    Director Counsel
                    Gitanjali S. Gutierrez (GG1234)
                    CENTER FOR CONSTITUTIONAL RIGHTS
                    666 Broadway, 7th Floor
                    New York, New York 10012
                    Tel: (212) 614-6439
                    Fax: (212) 614-6499

# EXHIBIT

# A

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **AHMED AL DARBY, <u>et</u>. <u>al</u>.,** | ) | |
| | ) | |
| **Petitioners,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 05-2371 (RCL)** |
| | ) | |
| **GEORGE W. BUSH,** | ) | |
| **President of the United States, <u>et</u>. <u>al</u>.,** | ) | |
| | ) | |
| **Respondents.** | ) | |

## ORDER

Petitioners' motion [4], as renewed [10], for Expedited Entry of the Protective Order is hereby GRANTED. The following orders entered in the In re Guantanamo Detaineee Cases shall be fully applicable in this case as if entered herein: (1) Amended Protective Order and Procedures for Counsel Access to Detainees at the United States Naval Base in Guantanamo Bay, Cuba, issued November 8, 2004 (344 F. Supp. 2d 174 (D.D.C. 2004)); (2) Order Addressing Designation Procedures for "Protected Information," issued November 10, 2004; and (3) Order Supplementing and Amending Filing Procedures Contained n November 8, 2004 Amended Protective Order, issued December 13, 2004. The motion for order to show cause is denied as moot.

SO ORDERED.


Signed by Royce C. Lamberth, United States District Judge, July 3, 2006.

# EXHIBIT B

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| FAWAZ NAMAN HAMOUD, ) | |
| ) | |
| Petitioners, ) | |
| ) | |
| v. ) | Civil Action No. 05-1894 (RWR) |
| ) | |
| GEORGE W. BUSH et al., ) | |
| ) | |
| Respondents. ) | |
| _____ ) | |

MEMORANDUM ORDER

_____Petitioner Fawaz Naman Hamoud is a detainee in United States
custody at Guantanamo Bay Naval Base who filed a petition for a
writ of habeas corpus challenging the legality of his detention.
Respondents have filed a motion to stay all proceedings pending
resolution of the appeals in Khalid v. Bush et al., 355
F. Supp. 2d 311 (D.D.C. 2005), appeals docketed sub nom.
Boumediene v. Bush et al., Nos. 05-5062, 05-5063 (D.C. Cir.
Mar. 3, 2005) and In re Guantanamo Detainee Cases, 355 F.
Supp. 2d 443 (D.D.C. 2005), appeals docketed, Nos. 05-5064 et al.
(D.C. Cir. Mar. 7, 2005).[1]  (See Dkt. No. 4.)  Petitioner opposes
the stay and argues that any stay granted should, at a minimum,

_____

[1]  One of the disputed matters on appeal before the District
of Columbia Circuit has been resolved by decision of the United
States Supreme Court in Hamdan v. Rumsfeld, -- S. Ct. -- , 2006
WL 1764793 (June 29, 2006), where the Court made clear that this
court retains jurisdiction over this habeas corpus petition.  See
id. at *13-16 & n.15.

-2-

be conditioned on orders requiring the respondents to preserve

all documents and information relating to petitioner and to

provide thirty days' notice of any transfer of petitioner.  (See

Dkt. No. 10.)  Respondents' motion to stay all proceedings will

be granted in part and denied in part.

I.    CONDITIONAL STAY OF PROCEEDINGS

A primary purpose of a stay pending resolution of issues on

appeal is to preserve the status quo among the parties.

Washington Area Metro. Transit Comm'n v. Holiday Tours, Inc., 559

F.2d 841, 844 (D.C. Cir. 1977) (a stay pending appeal is

preventative or protective, and seeks to maintain the status quo

pending a final determination of issues on appeal); see Warm

Springs Dam Task Force v. Gribble, 417 U.S. 1301, 1310 (1974)

(granting stay pending appeal to maintain the status quo between

the parties).  A court may, in appropriate situations, specify

protective conditions in balancing the hardship necessarily

imposed on the party whose suit or execution of judgment has been

stayed pending appeal.  Cooks v. Fowler, 459 F.2d 1269, 1272-73 &

n.27 (D.C. Cir. 1971) (affirming condition of stay requiring

tenant appealing judgment to deposit funds in court registry

pending appeal); see also City of Portland, Or. v. Federal

Maritime Comm'n, 433 F.2d 502, 504 (D.C. Cir. 1970) (directing

the proponent of a stay in a case challenging shippers' exclusion

of one city's port from service to "be prepared to state reasons

-3-

why this court should not impose a conditional stay requiring the
rotation of service among the ports involved pending final review
and determination"); Scott v. Scott, 382 F.2d 461, 462 (D.C. Cir.
1967) (discussing a stay of execution of judgment conditioned
upon support payments); Center for Int'l Environmental Law v.
Office of the U.S. Trade Rep., 240 F. Supp. 2d 21, 23 (D.D.C.
2003) (conditioning stay pending appeal on party seeking an
expedited appeal).  Where, as here, the conditions imposed on the
proponent of the stay are "neither heavy nor unexpected,"
imposing a protective condition is well within a court's
discretion.  Cooks v. Fowler, 459 F.2d at 249 (quoting Bell v.
Tsintolas Realty Co., 430 F.2d at 482 (D.C. Cir. 1970) (stating
"[w]e have little doubt that . . . [a court] may fashion an
equitable remedy to avoid placing one party at a severe
disadvantage during the period of litigation")).

     Therefore, here

     the court will "guard against depriving the processes
     of justice of their suppleness of adaptation to varying
     conditions." Landis v. North American Co., 299 U.S.
     248, 256 (1936).  Coextensive with a district court's
     inherent power to stay proceedings is the power to
     craft a stay that balances the hardships to the
     parties.  Id. at 255 (noting concern regarding a stay
     causing "even a fair possibility . . . [of] damage to
     some one else."); see also Clinton v. Jones, 520 U.S.
     681, 707 (1997) (noting that "burdens [to the parties]
     are appropriate matters for the District Court to
     evaluate in its management of the case.").

Al-Oshan v. Bush, Civil Action No. 05-520 (D.D.C. Mar. 31, 2005)
(Urbina, J.) (Order, Dkt. No. 12).

-4-

II.  PRESERVATION OF EVIDENCE

     The Supreme Court's opinion in Harris v. Nelson, 394 U.S.
286 (1969), makes clear that the discovery provisions of the
Federal Rules of Civil Procedure do not automatically apply in
whole to federal habeas corpus proceedings.  Id. at 294 n.5, 298-
99.  Therefore, the preservation obligations that flow to a
litigant from the federal discovery rules cannot be presumed to
apply to habeas litigants absent some express application by a
court.  Accordingly, a preservation order in habeas proceedings,
particularly in proceedings such as these where there has been no
full disclosure of the facts on the public record that justify
the challenged detention, is not superfluous or unnecessary.

     Harris also makes clear that a district court's authority to
issue orders pursuant to 28 U.S.C. § 1651 in aid of its fact-
finding obligations in habeas corpus proceedings is intended to
be flexible and should be exercised as the circumstances require
for a proper and just disposition.

          [The Supreme Court has] held explicitly that the
          purpose and function of the All Writs Act to supply the
          courts with the instruments needed to perform their
          duty [to issue orders appropriate to assist them in
          conducting factual inquiries] . . . extend to habeas
          corpus proceedings.

          At any time in the [habeas corpus] proceedings, when
          the court considers that it is necessary to do so in
          order that a fair and meaningful evidentiary hearing
          may be held so that the court may properly "dispose of
          the matter as law and justice require," either on its
          own motion or upon cause shown by the petitioner, it
          may issue such writs and take or authorize such

-5-

> proceedings with respect to development, before or in
> conjunction with the hearing of the facts relevant to
> the claims advanced by the parties, as may be
> "necessary or appropriate in aid of [its jurisdiction]
> . . . and agreeable to the usages and principles of
> law."  28 U.S.C. § 1651.
>
> . . . Obviously, in exercising this power, the court
> may utilize familiar procedures, as appropriate,
> whether these are found in the civil or criminal rules
> or elsewhere in the "usages and principles of law."

394 U.S. at 299-300 (footnote omitted).  "[T]he power of inquiry

on federal habeas corpus is plenary" and its exercise depends

entirely on the circumstances.  Harris, 394 U.S. at 291.

The preservation order petitioners seek is tailored to

preserve "documents and information in . . . [respondents']

possession" that may be "relevant to litigation or potential

litigation or are reasonably calculated to lead to the discovery

of admissible evidence."  Wm. T. Thompson Co. v. General

Nutrition Corp., 593 F. Supp. 1443, 1455 (C.D. Cal. 1984).

Documents reflecting treatment of detainees -- whether statements

of official policy, cumulative evidence of specific practices, or

something else -- may be probative of the treatment of

petitioners or may lead to other probative evidence.  The

requested order imposes no greater obligation on respondents than

the federal discovery rules' preservation obligations impose on a

litigant in a typical civil lawsuit.

-6-

CONCLUSION AND ORDER

For the foregoing reasons, it is hereby

ORDERED that respondents' motion for a stay be, and hereby
is, GRANTED in part and DENIED in part.  The proceedings in this
case are STAYED pending resolution of the appeals pending before
the United States Court of Appeals for the District of Columbia
Circuit in In re Guantanamo Detainee Cases and Boumediene v. Bush
et al., except that petitioner may seek emergency relief from
this court in appropriate circumstances, such as when petitioner
has reason to believe that he is facing the possibility of
continued detention at the request of the United States in a
location that does not provide access to this court.  It is
further

ORDERED that respondents, their agents, servants, employees,
confederates, and any persons acting in concert or participation
with them, or having actual or implicit knowledge of this Order
by personal service or otherwise, shall provide this court and
petitioner or any counsel representing him with thirty days'
advance written notice of any transfer or removal of the detained
petitioner from United States custody at Guantanamo Bay.  It is
further

ORDERED that respondents shall preserve and maintain all
evidence, documents and information, without limitation, now or

-7-

ever in respondents' possession, custody or control, regarding

the detained petitioner in this case.

SIGNED this 5th day of July, 2006.


_____/s/_____
RICHARD W. ROBERTS
United States District Judge

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been served by Certified Mail, Return Receipt Requested, to the following persons:

**Robert J. Katerberg**
ATTORNEY
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW
Washington, D.C.  20530

On this the 20th day of July 2006.

_____
Louis P. Bonilla

CH2\ 1336414.1